PEOPLE v JONES

1. CRIMINAL LAW—PROSECUTOR'S REMARKS—OBJECTION—PRESERVING QUESTION.

A defendant's failure to object to allegedly improper remarks made by the prosecutor during closing argument precludes appellate review unless it can be said that an objection and the appropriate curative instruction could not have eliminated the prejudice arising from the prosecutor's statements.

2. CRIMINAL LAW—PROSECUTOR'S REMARKS—WITNESSES—CREDIBILITY OF WITNESSES.

A prosecutor's comments regarding testimony on the identification of the defendant, made during his closing argument in an attempt to refute the defendant's theory of mistaken identity, were not prejudicial and improper where the prosecutor did not vouch for the credibility of the witnesses but merely attempted to call the jury's attention to the fact that the witnesses were honest by using examples taken from their testimony.

3. CRIMINAL LAW—PROSECUTOR'S REMARKS—PRIOR CONVICTIONS—PRESERVING QUESTION.

A prosecutor's elicitation from a defendant of the fact that the defendant had a more recent prior conviction was not reversible error where the defendant's prior arrests had already been brought out on direct examination in an effort to show that the defendant was often a victim of mistaken identity, the defendant maintained that he had not been convicted of any crime for 12 years, and no objection to the prosecutor's comments was made by defense counsel.

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 March 5, 1975, at

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
   75 Am Jur 2d, Trial § 211 *et seq.*
[2] 75 Am Jur 2d, Trial §§ 305, 306.
[3] 29 Am Jur 2d, Evidence § 320 *et seq.*
   75 Am Jur 2d, Trial § 269.

Detroit. (Docket No. 20216.) Decided April 25, 1975.

Robert Jones was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: ALLEN, P. J., and McGREGOR and M. F. CAVANAGH, JJ.

McGREGOR, J. Defendant was charged with armed robbery, MCLA 750.529; MSA 28.797. More specifically, the defendant was charged with assaulting an employee of a credit union while armed with a dangerous weapon, a sawed-off shotgun, and stealing $175 from her. Defendant was convicted by a jury in the Detroit Recorder's Court, in a trial held on March 25, 1974, and April 9, 1974.

The prosecution called June Clark who testified that she was the manager of the credit union; that on September 7, 1973, around 11 a.m. during her work, a man approached her with a cleaner's bag over his arm; she did not recognize him at first; that he had a gun in his hand and the cleaner's bag covered the gun. The man announced the holdup, pushed one of the workers, a Ms. Wright, put his hand in the cash drawer, and removed some money. He told Ms. Wright to open the safe which she did, and she gave him some money from it. The man then told a customer, a Ms. Carter, to

join Ms. Wright and Ms. Clark in the workers' area. He commanded all the people to "lay down" and he left. Ms. Clark testified that this man took approximately $187 from the credit union. Ms. Clark further testified that at first she thought the defendant was another person who resembled him, but identified this defendant as the man who had committed the robbery. It was estimated that the whole event took place in about five minutes.

Ms. Wright testified that she was present on the day of the robbery; that she was an employee of the credit union; that the defendant came into the premises, walked into the workers' area, told her to put her hands up, and pushed her with a gun; that he instructed her to open the safe and took some money from it. Upon questioning, Ms. Wright testified that she had an opportunity to look directly at the defendant, and repeated her identification a second time.

Another witness testified that she saw a man enter the credit union on the morning in question, but had only a side view of him and could not positively identify the defendant as the holdup man.

Police were called. A report was made and the description of the holdup man was obtained from the witnesses. At a subsequent lineup on January 14, 1974, Ms. Wright identified the defendant as the holdup man; Ms. Carter was unable to do so.

Defendant's grandmother testified at trial that the defendant had, during his lifetime, frequently been mistaken for other people.

Defendant testified in his own behalf and denied committing the robbery. He also insisted that he had frequently been mistaken for other people during his lifetime. In his defense, he related that the Federal Bureau of Investigation had come to

his place of employment and took pictures of him, telling him that he resembled someone. He also testified that he had been brought to the police station on three or four occasions for investigation. He stated that he had not been arrested or convicted of any other offense for more than 12 years; that when he was 17 years old, he had been arrested and convicted of "joy riding".

The jury found defendant guilty of armed robbery, and he was sentenced to 5 to 20 years, with credit for 85 days spent in jail awaiting trial. The court recommended that he be incarcerated in the Michigan Training Unit, so that he could complete high school. Defendant appeals as of right.

Defendant raises two issues for our consideration: first, whether the prosecutor's comments relating to eyewitness testimony, in his summation to the jury, constituted reversible error, and second, whether the prosecutor committed reversible error when he questioned the defendant, on cross-examination, concerning a prior conviction.

In his closing statement to the jury, the prosecutor stated:

(1) "This isn't an issue any citizen takes lightly. You don't lightly accuse somebody of armed robbery."

(2) "We have come full circle. We had an event, a short lapse of time, and an arrest made at a subsequent time, and we had positive identification made on that person at a lineup with attorneys present to guarantee that the constitutional rights of the defendant aren't abridged."

(3) "But honest? Yes, she was honest also. She exhibited the kind of honesty and truthfulness that we hope to get from the witness stand because Jean Carter didn't get on the witness stand and say, 'Yes, I know that man, I know every detail of his face, even though I only saw him in a flash.' She didn't do that. She was

honest. She got a quick glance of him and looked away and was too frightened to catch anything else.

"She didn't positively identify the defendant. She wasn't here to cook up a story either. She didn't positively identify him at the lineup either. The police officer who was at the lineup told you there was no positive identification. That is honesty and truthfulness. That is what we look for from the witness stand."

(4) "I am going to suggest to you that the kind of honesty that Jean Carter had in telling us that she couldn't positively identify Robert Jones is the very same kind of honesty that Mrs. Clark and Mrs. Wright had when they said, 'Yes, we can identify him honestly and truthfully, Robert Jones is the man who held us up in the credit union that day.'"

In his rebuttal argument, the prosecutor made another remark which the defendant also cites as reversible error:

"Now, as to the fact that Mr. Jones lived in the neighborhood and might not be the most likely person to commit a crime against somebody he knew or somebody who might be able to recognize him, I suggest to you that in this particular city—and I think in a lot of cities—people's homes are broken into by people who live down the street, people are murdered by acquaintances, people they know, by their own relatives, all too often.

"As a matter of fact, it goes to the very highest levels in this government. Spiro Agnew was convicted of committing a crime in the midst of people who knew him very well."

Defense counsel made no objection to these remarks at trial.

Close examination indicates that the comments were an attempt to refute the defendant's theory of mistaken identity. When evaluated in the light of their relationship to the evidence admitted at trial, the comments are quite proper. Although the

analogy to Spiro Agnew is not well taken, neither this remark nor any of the other comments invaded the jury's exclusive province of testing the credibility of the witnesses. The prosecutor did not vouch for the credibility of the witnesses, he merely attempted to call the attention of the jury to the fact that the witnesses were honest, using examples taken from their testimony.

The standard for review of a prosecutor's remarks, when a defendant fails to object at trial, has been set forth in *People v McLendon,* 51 Mich App 543, 547; 215 NW2d 742 (1974):

"The general rule in Michigan is that a defendant's failure to object to allegedly improper remarks made by the prosecutor during closing argument precludes appellate review unless it can be said that an objection and the appropriate curative instruction could not have eliminated the prejudice arising from the prosecutor's statements. [Citations omitted.] We must, therefore, examine the complained-of statements to determine whether they were so prejudicial that their effect on the jurors' minds could not have been cured by a cautionary instruction from the trial judge."

If there was, in fact, any harm in the prosecutor's summation to the jury, it could have been cured by cautionary instruction from the trial judge, upon a proper request from the defense counsel.

In his charge to the jury, the trial judge stated:

"You are the sole judges of the credibility of the witnesses sworn here in open court before you and of the weight to be given to their testimony."

Applying the proper standards of review and closely examining the prosecutor's remarks, this

Court finds no merit in defendant's contentions of reversible error on this issue.

We now consider the second charge of error, whether the prosecutor committed reversible error when, on cross-examination, he questioned the defendant concerning a prior conviction.

The defendant erroneously suggests to this Court that he may introduce the defense of misidentification via the testimony of his grandmother, that he may take the witness stand and testify as to specific instances of misidentification which include arrests, and that, at the same time, he may claim that the prosecutor commits reversible error when he cross-examines the defendant, absent objection, about that very subject.

The theory of the defense in the trial court was that the defendant was mistakenly identified as the holdup man in this case. Defendant testified in his own behalf, during which testimony he stated that he had been mistakenly arrested many times, and related three or four specific instances in which he had been asked to come to police headquarters for investigation of armed robbery.

On direct examination, defense counsel and this defendant exchanged the following dialogue:

"*Q.* In other words, have you ever been arrested and convicted of anything?

"*A.* No, I haven't.

"*Q.* Never?

"*A.* Except about twelve years ago when I was seventeen.

"*Q.* What was that for?

"*A.* UAW or something—Unlawfully Driving Away an Automobile, something like that, which was broken to joyriding.

"*Q.* Have you been arrested and convicted of any other offense—

"*A.* No, I haven't.
"*Q.* —in the last twelve years?
"*A.* No, I haven't."

On cross-examination, the following colloquy took place between the prosecutor and this defendant:

"*Q.* I'm asking you whether or not in all these occasions that you have been mistaken for somebody else, you have never had occasion to be arrested or never been—
"*A.* I've never been convicted except the one time.
"*Q.* But you have been arrested as a suspect?
"*A.* That's correct.
"*Q.* And you were convicted about twelve years ago, you say?
"*A.* That's correct.
"*Q.* Isn't it a matter of fact, Mr. Jones, that you were convicted in 1971 of possession of narcotics paraphernalia?
"*A.* Paraphernalia, not narcotics.
"*Q.* But you did have the paraphernalia yourself?
"*A.* It was—
"*Q.* Yes or no, please.
"*A.* It was in my presence."

The defense counsel elicited the defendant's prior arrests from him on direct examination in an effort to prove that he was often a victim of mistaken identity. The defendant then clearly stated that he had not been convicted of any crime in 12 years since he was 17 years old and a minor.

The assistant prosecutor covered the same ground as the defense counsel concerning the prior arrests and the identity problem, and then elicited from the defendant the fact that the defendant was convicted in 1971 of possession of narcotics paraphernalia, apparently a misdemeanor. There

was no objection by the defense counsel, and the prosecutor pursued the subject no further.

Certainly, there is no correlation between a narcotics paraphernalia arrest and a conviction, and an armed robbery charge. However, the conviction seems to be probative from the aspect that the defendant was not always mistakenly identified and arrested, and certainly belies the defendant's self-proclaimed 12 years of innocence. The trial judge's discretion was not invoked, as there was no request to suppress the prior conviction record of the defendant. The proscriptions of *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), appear to be prospective in nature, in light of the Michigan Supreme Court's language stating that they wished to "prohibit the *further* use of municipal ordinance or misdemeanor convictions". 392 Mich 55.

This Court does not hold that the prosecutor in this case was required to remain silent as to the defendant's prior conviction, when the defendant professed absolute purity for a period of 12 years and presented himself as merely a victim of a face that seemed to match those of many wrongdoers.

Although the prosecutor's comments may have been improper, they do not constitute reversible error. There was no objection by the defense counsel.

"This Court has repeatedly stated that a claimed error in closing argument will not be considered on appeal if its prejudicial propensity could have been curtailed by a curative instruction. *People v Sesson,* 45 Mich App 288; 206 NW2d 495 (1973)." *People v Duncan,* 55 Mich App 403, 409; 222 NW2d 261 (1974).

We find no merit in the defendant's contentions under this issue.

Conviction affirmed.