PEOPLE v GARWOOD

Docket No. 144409. Submitted April 25, 1994, at Lansing. Decided June 7, 1994, at 9:15 A.M. Leave to appeal sought.

Lester K. Garwood was convicted in the Recorder's Court of Detroit, Beverley A. Jasper, J., of first-degree murder. Before his bench trial, the defendant moved to suppress as evidence a confession he had made to the police on the basis that, at the time he made his confession, he was psychologically incapable of understandingly and knowingly waiving his constitutional rights and sought to introduce evidence supporting his claim of suffering from a psychiatric disorder. The court ruled that the evidence concerning a psychiatric disorder was irrelevant and inadmissible and denied the motion to suppress. Testimony concerning the confession was admitted at trial. The defendant appealed.

The Court of Appeals *held:*

Although, in the absence of proof of police coercion, evidence of a defendant's psychiatric state is irrelevant with respect to the question whether a waiver of constitutional rights was voluntary, that evidence is relevant to the question whether a waiver that is otherwise voluntary was made knowingly and intelligently. Even without an allegation of police coercion or other wrongful conduct, a statement made pursuant to police questioning may be subject to suppression as evidence if the statement was made while the defendant's psychiatric state rendered impossible any knowing and intelligent waiver of constitutional rights. The case must be remanded for a determination whether the defendant's psychiatric state rendered impossible a knowing and intelligent waiver. If the waiver was knowing and intelligent, the conviction is affirmed. If the waiver was now knowing and intelligent because of the defendant's psychiatric state, the confession was inadmissible, and the defendant is entitled to a new trial.

Remanded for further proceedings.

REFERENCES

Am Jur 2d, Criminal Law § 797.

Supreme Court's views as to what constitutes valid waiver of accused's federal constitutional right to counsel. 101 L Ed 2d 1017.

CRIMINAL LAW — CONSTITUTIONAL RIGHTS — WAIVER.

> A criminal defendant's psychiatric state is not relevant, in the absence of proof of police coercion, to a determination whether the defendant's constitutional rights were waived voluntarily before the statement was made to the police; however, a defendant's psychiatric state may be relevant to the question whether a waiver was made knowingly and intelligently.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan M. Meinberg*), for the defendant on appeal.

Before: DOCTOROFF, C.J., and MURPHY and FITZGERALD, JJ.

PER CURIAM. The Court dispenses with oral argument pursuant to MCR 7.214(E).

Defendant was convicted of first-degree murder in a bench trial in the Recorder's Court of Detroit, in which a confession he made to Detective Monica Childs the morning after his arrest figured as central evidence in establishing that the homicide occurred in the course of a robbery. Absent a confession, the eyewitness testimony left some ambiguities concerning whether defendant simply may have murdered the victim and then subsequently decided to steal his valuables, which arguably would have been a lesser offense.

Before trial, defendant sought to suppress his confession, and a *Walker*[1] hearing was held. Detective Childs testified at the hearing, without dispute at this point, that defendant, before making a

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

statement, was advised of his *Miranda*[2] rights and voluntarily made a statement. In rebuttal, defendant attempted to introduce evidence, the testimony of a clinical psychologist with specialized training in forensic psychology, that because of his psychiatric history, including institutionalization and an ongoing regimen of prescribed medication, he, at the time of his interview by Detective Childs, had been incapable of understandingly and knowingly waiving his *Miranda* rights. The Recorder's Court ruled this evidence irrelevant and, accordingly, inadmissible for purposes of the *Walker* hearing, apparently agreeing with the prosecutor that, in light of *Colorado v Connelly,* 479 US 157; 107 S Ct 515; 93 L Ed 2d 473 (1986), absent evidence of police coercion, defendant's psychiatric state was of no moment.

We think the learned trial court erred in this ruling, failing to appreciate the distinction between whether the waiver of defendant's *Miranda* rights was voluntary, an issue which cannot be resolved in defendant's favor absent some police coercion, *Colorado v Connelly, supra,* and whether the otherwise voluntary waiver was knowing and intelligent. The latter issue may warrant suppression of the statement, even independent of any coercive or otherwise wrongful police conduct. We agree with the analysis of this issue in *State v Lee,* 175 Wis App 2d 348, 356-357, 362, 364-365; 499 NW2d 250 (1993):

> *Miranda* itself provides that "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at [384 US] 444. After *Connelly,* the United States Supreme Court in *Colorado v*

---

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Spring,* 479 US 564 [107 S Ct 851; 93 L Ed 2d 954] (1987), reiterated that *Connelly* did not abolish the knowing and intelligent requirements. Regarding *Miranda* waivers, the *Spring* Court provided:

"First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived."

*Id.* at 573 (quoting *Moran v Burbine,* 475 US 412, 421; [106 S Ct 1135; 89 L Ed 2d 410] (1986), and *Fare v Michael C,* 442 US 707, 725 [99 S Ct 2560; 61 L Ed 2d 197] (1979)).

"The *Spring* decision demonstrates that *Connelly* did not abrogate the requirement that a *Miranda* waiver be knowing and intelligent. Rather, *Connelly* merely means that, in general, issues of intelligent knowledge are distinct from issues of voluntariness. See [*People* v] *Bernasco,* [138 Ill 2d 349; 150 Ill Dec 155] 562 NE2d [958, 961 (1990)]. The *Connelly* opinion addressed (1) an initial confession given under circumstances requiring no *Miranda* warning, the voluntariness of the confession being at issue, and (2) subsequent confessions given after *Miranda* warnings, the voluntariness of the *Miranda* waivers being at issue. *See Bernasco,* 562 NE2d at 961.

At no point did *Connelly* overrule the *Burbine, Fare* and *Miranda* requirement that a *Miranda* waiver be intelligent and knowing as well as voluntary.[4] The *Connelly* opinion analyzed merely the constitutional voluntariness component of a confession's admissibility and of a waiver's validity. *Bernasco,* 562 NE2d at 961 (citing *Connelly,* 479 US at 167, 170).

The court in *United States v Bradshaw,* [290 US

App DC 129] 935 F2d 295 [(1991)], agreed with this analysis. It wrote "[w]e read *Connelly* . . . as holding only that police coercion is a necessary prerequisite to a determination that a waiver was *involuntary* and not as bearing on the separate question whether the waiver was knowing and intelligent." *Id.* at 299.

We agree with the D.C. Circuit's remark that some of the *Connelly* majority's reasoning with regard to voluntariness may also apply to knowing intelligence. *Bradshaw,* 935 F2d at 299. For example, *Connelly* observed that evidence should not be excluded unless suppression would deter future constitutional violations. *Bradshaw,* 935 F2d at 299 (citing *Connelly,* 479 US at 166). Here, where the evidence shows that there was no police coercion, it is difficult to envision what constitutional violation this suppression would deter. However, the law of the land, as enunciated in *Spring,* 479 US at 573, requires a particular showing of knowing intelligence in order for a valid *Miranda* waiver to take place.

\* \* \*

*Connelly* reaffirmed the United States Supreme Court's position in *Lego v Twomey,* 404 US 477 [92 S Ct 619; 30 L Ed 2d 618] (1972), that whenever the state bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of *Miranda,* the state need prove waiver only by a preponderance of the evidence. *Connelly,* 479 US at 168.

\* \* \*

On remand, we direct the trial court, when determining whether the waiver was knowing and intelligent, to apply an objective standard. *United States v Yunis,* [273 US App DC 290] 859 F2d 953, 965 [(1988)]. By "objective standard" we mean that the validity of any *Miranda* waiver must be determined by the court's inspection of the particular circumstances involved, including the education, experience and conduct of the accused as well as the credibility of the police officers' testimony.

*Pettyjohn v United States,* [136 US App DC 69] 419 F2d 651, 654 n 7 [(1969)]. The court will then objectively assess all the aforementioned factors and determine whether the waiver was knowingly [sic] and intelligent. *Id.*

Additionally, in applying this objective test, the court should be mindful of the federal constitutional distinction between two types of awareness; one not contemplated by the knowing and intelligent *Miranda* waiver requirement, and one required by it. The *Bernasco* court wrote:

"The first type of awareness involves 'know[ing] and understand[ing] every possible consequence of a waiver of the Fifth Amendment privilege' being 'totally rational and properly motivated' when confessing, or having all information that might be 'useful' or that might '. . . affec[t one's] decision to confess,' such as a list of 'all the possible subjects of questioning in advance of interrogation.' . . . [T]his mental state is not necessary for a valid *Miranda* waiver. The Constitution does not demand 'that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights,' and there is no Federal constitutional right to confess only when in possession of information that 'could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature.'

"The second type cf awareness involves simply being cognizant at all times of 'the State's intention to use [one's] statements to secure a conviction' and of the fact that one can 'stand mute and request a lawyer.' The latter mental state is what is held necessary for a valid *Miranda* waiver."

*Id.* at 962 (citations omitted). The trial court should determine whether the state has shown by the greater weight of the credible evidence whether, considering the totality of the circumstances, Lee possessed that second type of awareness, and thus validly waived his *Miranda* rights.

---

[4] We agree with *Bernasco's* comment that there

remains a world of difference between voluntariness and intelligent knowledge. A mentally ill person may "confess" at length without external compulsion but not intelligently and knowingly, while a perfectly rational person on the torture rack may confess intelligently and knowingly but not voluntarily. *Id.* at 962.

Accordingly, we remand this matter to the Recorder's Court for continuation of the *Walker* hearing nunc pro tunc, *People v Blocker,* 393 Mich 501; 227 NW2d 767 (1975), with defendant to be awarded a new trial if the court determines that the confession was inadmissible. Otherwise, defendant's conviction stands affirmed.

Remanded for further proceedings consistent with this opinion. We retain no further jurisdiction.