PEOPLE v HOWARD

Docket No. 172633. Submitted August 5, 1997, at Detroit. Decided November 25, 1997, at 9:05 A.M. Leave to appeal sought.

Connell L. Howard, after a prior trial resulted in a mistrial, was convicted by a jury in the Genesee Circuit Court, Duncan M. Beagle, J., of two counts of first-degree murder and one count of possession of a firearm during the commission of a felony. The defendant admitted that he had shot David and Terry Lamb, a husband and wife real estate team, while they were inside his mother's home. He claimed that he had shot the victims in self-defense and while suffering from diminished capacity caused by the victims' threatening and abusive conduct while confronting him concerning some delinquent house payments. The defendant appealed, claiming error as a result of the racial makeup of the jury that was selected, the admission of certain statements that he had made to the police, the numerous instances of alleged prosecutorial misconduct, the admission of photographs of the victims, the admission of a page from the appointment book of one of the victims, and the denial of a postconviction defense motion for a complete transcript of the first trial.

The Court of Appeals *held*:

1. The necessary evidentiary support for the claim of the defendant, an African-American, that he was denied a fair trial by reason of the fact that African-Americans were underrepresented in both the jury venire and the jury panel was not established on the record. A party claiming that a jury was not drawn from a fair cross section of the community must show that any underrepresentation is because of systematic exclusion in the jury selection process of a distinctive group of the community. The defendant failed to present any evidence that there was a systematic exclusion of African-Americans in the jury selection process. The fact that there may have been underrepresentation of African-Americans in the particular venire from which this jury panel was drawn is not evidence of a systematic exclusion.

2. The trial court did not abuse its discretion in rejecting the defendant's claim that the prosecutor evidenced a discriminatory purpose in the use of peremptory challenges to dismiss three Afri-

can-American jurors. The prosecutor adequately established a race-neutral reason for the use of each of the contested peremptory challenges.

3. The trial court did not abuse its discretion in refusing to grant the defendant's second request for additional peremptory challenges.

4. The question whether there was constitutionally impermissible custodial interrogation of the defendant by a police officer at the scene of the crime, although raised before the trial court, was never properly factually developed and is deemed to have been abandoned. In any event, there was no testimony admitted at trial concerning any statements that might have been made by the defendant to the police at the scene of the crime.

5. The trial court did not abuse its discretion in refusing to allow at the hearing concerning the admissibility of a statement given by the defendant to the police the testimony of a clinical psychologist with respect to the defendant's ability to knowingly and intelligently waive his constitutional rights. Because there was nothing on the record to suggest that the defendant suffered from some psychiatric condition or some cognitive impairment that would render him unable to knowingly and intelligently waive his constitutional rights, the court properly determined that it did not need the testimony of an expert witness to assist in its determination of that question. In any event, because the expert testimony proffered at the evidentiary hearing was offered at trial by the defendant in support of his defense of diminished capacity and was obviously rejected by the jury, any error by the trial court in refusing to hear that testimony at the evidentiary hearing was harmless.

6. The record supports the trial court's finding that the defendant's confession was voluntary.

7. The prosecutor's remarks at trial, whether considered individually or cumulatively, did not improperly denigrate the defendant, the defense counsel, or the defense's expert witness, and did not improperly vouch for the credibility of a prosecution witness. To the extent that one remark by the prosecutor touched on a matter not in evidence, no miscarriage of justice has been shown in view of the fact that the remark involved a collateral matter that was not pertinent to the determination of the defendant's guilt and could have been remedied by a curative instruction had an objection been raised at trial. Viewed as a whole, the prosecutor's remarks did not deprive the defendant of a fair trial.

8. The trial court did not abuse its discretion in admitting photographs of one victim taken at the scene of the crime and autopsy photographs of the other victim. The photographs of the victim at

the scene of the crime showed the location in the house where the victim was shot and were probative of the question whether the defendant shot the victim in self-defense. The autopsy photographs showing powder burns on the victim's neck and a missing fingernail on the victim's hand were also probative of the question whether the defendant shot in self-defense.

9. Because the physical location of the defendant at the time of his being interviewed by the defense's expert witness was not relevant to that witness' evaluation and opinion regarding the question of diminished capacity of the defendant at the time of the offense, the trial court did not abuse its discretion in excluding testimony that the interview took place at a time when the defendant was being housed in the psychiatric unit of the county jail. The claim that the trial court erred in refusing to allow the expert witness to testify concerning the reliability or accuracy of the defendant's statement to the police is without merit, because that question was never directly raised at trial and the witness did, in fact, testify that she did not know whether the statement was accurate.

10. The trial court did not abuse its discretion in admitting a page from an appointment book of one of the victims that indicated the address of the house at which the shootings took place opposite the approximate time of the shootings. The fact that the book had been ruled inadmissible at the first trial did not preclude it from being found to be admissible at the second trial. The testimony of the victim's son that he was familiar with his mother's writing and that the writing in the appointment book was his mother's was sufficient to authenticate the book. Upon such authentication, the book was properly admitted under the state of mind exception to the hearsay rule.

11. Because appellate counsel in a postconviction motion for the complete transcript of the first trial did not show that the partial transcripts already in counsel's possession were insufficient and made no showing of a colorable need for the complete transcript of the first trial, the trial court did not abuse its discretion in denying the request for preparation of the complete transcript of the first trial.

Affirmed.

FITZGERALD, J., concurring in part and dissenting in part, stated that the matter should be remanded to the trial court for a continuation of the evidentiary hearing concerning the admission of the defendant's statement to the police to allow the trial court to consider the testimony of defendant's expert witness in determining whether there was a knowing and intelligent waiver.

1. CONSTITUTIONAL LAW — CHALLENGE TO JURY ARRAY — FAIR CROSS SECTION.

A party claiming that a jury was not drawn from a fair cross section of the community must show that any underrepresentation of a distinctive group of the community was because of the systematic exclusion of that group in the jury selection process.

2. CRIMINAL LAW — CONSTITUTIONAL LAW — WAIVER.

A criminal defendant's psychiatric state is not relevant, in the absence of proof of police coercion, to a determination whether the defendant's constitutional rights were waived voluntarily; however, a defendant's psychiatric state may be relevant to the question whether a waiver was made knowingly and intelligently.

3. CRIMINAL LAW — TRANSCRIPTS — MISTRIALS — POSTCONVICTION APPEALS.

A postconviction motion for a full transcript of a prior trial on the same charges that resulted in a mistrial must be granted only where the defendant has shown a colorable need for the complete transcript of the prior trial.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, *Donald A. Kuebler*, Chief, Appeals, Research, and Training, and *Morris Kent* and *Janet McLaren*, Assistant Prosecuting Attorneys, for the people.

State Appellate Defender (by *Chari K. Grove*), for the defendant on appeal.

Before: SMOLENSKI, P.J., and FITZGERALD and GAGE, JJ.

GAGE, J. After defendant's first trial ended in a mistrial, defendant was retried and convicted by a jury of two counts of first-degree murder, MCL 750.316; MSA 28.548, and one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to two concurrent terms of life imprisonment without parole, to be served consecutively to a two-year term for felony-firearm. He appeals as of right. We affirm.

This case stems from the November 12, 1992, shooting deaths of David and Terry Lamb, a husband and wife real estate team who were fatally shot while inside defendant's mother's house. Defendant admitted shooting the Lambs but claimed self-defense and diminished capacity. According to the defense theory, defendant shot the Lambs after they became threatening and abusive while confronting defendant about some delinquent house payments. On the basis of the defendant's description of the events, a defense expert concluded that defendant experienced "brief reactive psychosis" as a result of emotional stress and trauma caused by the Lambs' conduct, thereby rendering him "diminished in capacity to formulate specific intent as it relates to this offense."

I

Defendant, who is African-American, raises three issues on appeal regarding the jury selection: (1) he was denied his constitutional right to an impartial jury drawn from a fair cross section of the community where only one African-American juror served on his jury and where African-Americans were underrepresented in his particular jury array, (2) the prosecutor used peremptory challenges in a discriminatory manner to strike African-American jurors in violation of *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), and (3) the trial court erred in denying his request for additional peremptory challenges.

A

We reject defendant's fair cross-section claim. While a criminal defendant is entitled to an impartial jury drawn from a fair cross section of the community, US Const, Am VI, he is not entitled to a petit

jury that exactly mirrors the community. *Taylor v Louisiana*, 419 US 522, 538; 95 S Ct 692; 42 L Ed 2d 690 (1975); *People v Hubbard (After Remand)*, 217 Mich App 459, 472; 552 NW2d 593 (1996). To establish a prima facie violation of the fair cross-section requirement, a defendant must show

> "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." [*Id.* at 473, quoting *Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979).]

Although defendant asserts that African-Americans were underrepresented in his particular array, he presented no evidence concerning the representation of African-Americans on jury venires in general. Merely showing one case of alleged underrepresentation does not rise to a "general" underrepresentation that is required for establishing a prima facie case. *Timmel v Phillips*, 799 F2d 1083, 1086 (CA 5, 1986). Defendant also failed to show that any alleged underrepresentation was due to systematic exclusion, i.e., an exclusion resulting from some circumstance inherent in the particular jury selection process used. *Duren, supra* at 366; *Hubbard (After Remand), supra* at 481. Following a defense objection during jury selection, the trial court summoned the county's deputy court administrator, who stated that jurors were selected from a source list of residents with driver's licenses or state identification cards. Defendant did not elicit any other details regarding the selection process, nor did he present any evidence show-

ing that the selection process resulted in the systematic exclusion of African-American residents. It is well settled that "[o]ne incidence of a jury venire being disproportionate is not evidence of a 'systematic' exclusion." *Timmel, supra* at 1087; see also *Hubbard (After Remand), supra* at 481.

B

Defendant also argues that the trial court erred in finding that the prosecutor's reasons for peremptorily dismissing three African-American jurors[1] were sufficient to overcome a showing of discriminatory purpose under *Batson, supra.* We disagree.

To overcome a prima facie showing of discriminatory purpose, the prosecution must come forth with a racially neutral explanation for challenging African-American jurors. *Batson, supra* at 97. Mere statements of good faith or denial of a discriminatory motive are insufficient; rather, the prosecutor must articulate a neutral explanation related to the particular case being tried. *Id.* at 98. The trial court must then determine if the defendant has established purposeful discrimination. *Id.* This Court reviews a trial court's *Batson* ruling for an abuse of discretion. *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 319-320; 553 NW2d 377 (1996).

The prosecutor dismissed one of the African-American jurors because she was a renter, explaining that he preferred not to have any renters on the jury, regardless of race. Although defendant asserts that this is a "patently ridiculous" reason for dismissal, it

---

[1] The prosecutor peremptorily dismissed four African-American jurors at trial. Defendant has challenged the dismissal of only three of those jurors on appeal.

is a reason related to the circumstances of this case, inasmuch as the Lambs were shot while inquiring about overdue house payments, a situation more commonly associated with renters. Under the circumstances of the case, it was reasonable for the prosecutor to believe that a renter might be more sympathetic to defendant's situation.[2] Defendant asserts that a second African-American juror was dismissed solely on account of perceived "defensiveness," a reason defendant contends is too subjective and tenuous to rebut a presumption of purposeful discrimination. However, the record reveals that the juror was dismissed primarily because he had an uncle with whom he was close who had been tried for murder, a race-neutral reason. The final juror in question was dismissed because she was a circuit court probation officer, she was familiar with criminal laws and procedures, and she had previously expressed a desire to be excused from jury service because of job concerns. Although defendant asserts that dismissal of this juror was not justified because she was not familiar with any of the parties and because the trial court alleviated her job concerns, these arguments are more directed toward a dismissal for cause. The prosecutor's burden of providing a race-neutral reason for exercising a peremptory challenge does not rise to the level of requiring the prosecutor to justify the exercise of a challenge for cause. *Batson, supra* at 97; *People v Barker*, 179 Mich App 702, 706; 446 NW2d 549 (1989), aff'd 437 Mich 161; 468 NW2d 492 (1991).

---

[2] Defendant successfully challenged one juror for cause on the basis that the juror was a landlord.

The trial court accepted the prosecutor's race-neutral explanations for dismissing the three African-American jurors in question and concluded that the prosecutor did not excuse the jurors on account of their race. We are satisfied that the trial court did not abuse its discretion in rejecting defendant's claim of purposeful discrimination.[3]

C

A trial court may grant additional peremptory challenges on a showing of good cause. MCR 6.412(E)(2). A decision denying a request for additional peremptory challenges is reviewed for an abuse of discretion. *People v Lee*, 212 Mich App 228, 252; 537 NW2d 233 (1995).

In this case, the trial court granted an initial request by defendant for additional peremptory challenges, awarding him six additional challenges, but denied a second request for additional peremptory challenges. Defendant's second request was premised, for the most part, on his allegations of systematic exclusion of African-Americans from the jury array and discriminatory use of peremptory challenges by the prosecutor, claims that the trial court rejected below and which we have now rejected on appeal. We find no abuse of discretion in the denial of defendant's second request for additional peremptory challenges.

---

[3] We note that the prosecutor did not use all of his peremptory challenges and ultimately accepted a jury that included an African-American juror, a circumstance that militates against a finding of purposeful discrimination. See *People v Williams*, 174 Mich App 132, 136-137; 435 NW2d 469 (1989).

II

Defendant next challenges the admissibility of certain statements that he made to the police, contending that they were illegally obtained and, therefore, should have been suppressed.

A

Defendant first argues that he was improperly subjected to a custodial interrogation by Officer Charles Wright at the crime scene, without having been advised of his *Miranda*[4] rights. Although defendant raised this issue in a written motion to suppress, he failed to pursue the issue at the *Walker*[5] hearing that was conducted in this matter and, consequently, a factual record supporting defendant's claim was never developed. Under the circumstances, we conclude that the issue has been abandoned. See *People v Riley*, 88 Mich App 727, 731; 279 NW2d 303 (1979). Regardless, we find no basis for reversal because Officer Wright did not testify at trial regarding any statements made by defendant, nor has defendant identified any particular statement made to Officer Wright that allegedly was improperly admitted at trial.

B

Defendant also challenges the admissibility of his "formal" police confession, claiming first that it was obtained without a knowing and intelligent waiver of his *Miranda* rights. At the *Walker* hearing, defendant attempted to present the testimony of a clinical psychologist concerning his capacity to knowingly and

---

[4] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[5] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

intelligently waive his *Miranda* rights. The trial court refused to receive such testimony, concluding that defendant's mental state was not relevant absent evidence of police misconduct. Defendant now argues that the trial court erred in its ruling and that, because of this error, he was denied his state and federal constitutional rights to due process and to a full and fair hearing. Defendant further contends that we must remand for a continuation of the *Walker* hearing. We disagree with defendant's position.

Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waives his Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966); *People v Garwood*, 205 Mich App 553, 555-556; 517 NW2d 843 (1994). Whether a waiver of *Miranda* rights is voluntary and whether an otherwise voluntary waiver is knowing and intelligent are separate questions. *People v Cheatham*, 453 Mich 1, 27, 44; 551 NW2d 355 (1996); *Garwood, supra* at 555. While the voluntariness prong is determined solely by examining police conduct, a statement made pursuant to police questioning may be suppressed in the absence of police coercion if the defendant was incapable of knowingly and intelligently waiving his constitutional rights. *Garwood, supra.* Whether a suspect has knowingly and intelligently waived his *Miranda* rights depends in each case on the totality of the circumstances, including the defendant's intelligence and capacity to understand the warnings given. *Cheatham, supra* at 27, 44.

During the *Walker* hearing in the present case, the trial court refused to permit defendant's expert, a psychologist, to testify regarding defendant's mental

capacity to waive knowingly and intelligently his *Miranda* rights at the time of his police interrogation. The court remarked:

> Now, Mr. Barney, on behalf of his client, has argued that the defendant's diminished mental capacity at the time of his custodial interrogation rendered him unable to competently waive his constitutional rights and he seeks to call Sandra Paige, Ph.D., who is a consulting forensic examiner, about the testimony as to an evaluation she did of Mr. Howard, and which I take it she had offered testimony that his mental capacity at the time of the arrest prevented him from understanding and/or waiving what we commonly refer to as Miranda rights.

> *     *     *

> Now, for the purposes of this hearing we have obviously heard testimony from Sergeant Elford, we have heard testimony from defendant's mother, and I have had an opportunity to read the testimony of the—one of the first officers on the scene, Charles Wright, and if you look at the criteria that I read from the Colorado case, it's this Court's opinion that I have pretty much focused in on the police conduct in the way the interview was handled, and I won't cite all the facts, but it talks about the age, lack of education, intelligence level, extent of previous experience with police, repeated and prolonged nature of the questioning, length of the detention of the accused and so forth.

> *     *     *

> I have looked at the totality of the circumstances from the testimony offered in reading the testimony of the witnesses and the statement of Mr. Howard, and I am satisfied that the prosecution has met their burden of proof, and it will be the Ruling of the Court that I don't feel that I need testimony from an expert witness to assist the Court. So the decision will be not to allow the witness to offer their testimony as a part of this hearing certainly. If Mr. Barney wants to offer that witness in the trial he should be given every opportunity. And, again, let's keep in mind that the Court's

ruling only has to do with the voluntariness of his statement.

And, again, Mr. Howard certainly has a right to remain silent, but if he wants to offer testimony in the trial he certainly has every right to do so and it will ultimately be up to this jury to consider the weight and credibility of the statement, and they certainly may feel differently about the way the statement was taken, but in terms of the Court's responsibility on voluntariness I am satisfied the prosecution has met their burden of proof by a preponderance of the evidence and I will deny the motion at this time.

We acknowledge that the trial court misstated the relevant law. As noted by this Court in *Garwood, supra* at 557, the federal courts have held that police coercion is a necessary prerequisite to a determination that a waiver was *involuntary* but police coercion does not bear on the separate question whether the waiver was knowing and intelligent. However, the United States Supreme Court has observed that evidence should not be excluded unless suppression would deter future constitutional violations. *Colorado v Connelly,* 479 US 157, 166; 107 S Ct 515; 93 L Ed 2d 473 (1986). Where there has been no police coercion, " 'it is difficult to envision what constitutional violation . . . suppression would deter. However, the law of the land, as enunciated in [*Colorado v Spring,* 479 US 564, 573; 107 S Ct 851; 93 L Ed 2d 954 (1987)] requires a particular showing of knowing intelligence in order for a valid *Miranda* waiver to take place.' " *Garwood, supra* at 557 (quoting *State v Lee,* 175 Wis 2d 348, 356-357, 362, 364-365; 499 NW2d 250 [1993]).

Under certain limited circumstances, custodial statements may be suppressed absent any coercive conduct by the police. *Garwood, supra* at 555. We reject, however, defendant's argument that if there

was error in the admission of evidence during a
*Walker* hearing, we are required to remand this matter
to the trial court pursuant to our holding in *Garwood.*
In *Garwood,* the defendant had a psychiatric history,
which included institutionalization and an ongoing
regimen of prescribed medication. There was some
reasonable question, therefore, about his ability to
make a knowing and intelligent waiver of his
*Miranda* rights. During a *Walker* hearing, the trial
court in *Garwood* refused to allow the testimony of a
clinical psychologist, ruling that defendant's psychiat-
ric state was not relevant to the determination
whether the waiver of his *Miranda* rights was volun-
tary and knowing and intelligent. This Court ruled
that the trial court erred and remanded for purposes
of continuing with the *Walker* hearing.

However, the facts of *Garwood* are distinguishable
from the present case, in which the trial court stated
its understanding of the test for a valid waiver of
*Miranda* rights—the totality of the circumstances—
and found that there was no evidence presented at
the *Walker* hearing that defendant had any history of
mental illness. The trial court heard testimony at the
*Walker* hearing from the police interrogator, defend-
ant, and defendant's mother, and the court noted that
defendant's mother had specifically indicated that
defendant had no psychiatric history. Moreover, there
was no evidence presented at the hearing that defend-
ant's intelligence was below at least average. For
example, under direct examination, the interrogating
officer noted that when defendant was asked if he
wished to waive his right to have an attorney present
during interrogation, defendant voluntarily responded,
"Yes, I have nothing to hide." Such responses to the

interrogating officer's direct questions indicate that defendant's cognitive abilities did not appear to be impaired. The court then determined that it did not need the testimony of an expert witness to assist in its determination.

We review evidentiary rulings for an abuse of discretion. *Haberkorn v Chrysler Corp*, 210 Mich App 354, 361; 533 NW2d 373 (1995). " 'Waiver and defendant's competence to waive his rights are legal, not psychological, concepts, and the judge, not an expert witness, is the ultimate decision maker on these issues.' " *Cheatham, supra* at 34 (quoting *State v Cleary*, 161 Vt 403, 406; 641 A2d 102 [1994]). With no evidence in front of the trial court to support a finding that defendant's waiver was not knowing or intelligent, we decline to find that the court abused its discretion in refusing to admit the psychologist's testimony.

Moreover, even if defendant's confession had not been voluntarily or knowingly and intelligently made, and we do not believe this to be true, its admission at trial would be subject to a harmless error analysis, much like the erroneous admission of any other evidence. See *Arizona v Fulminante*, 499 US 279, 302, 312; 111 S Ct 1246; 113 L Ed 2d 302 (1991); *People v Young (On Remand)*, 222 Mich App 498, 504; 565 NW2d 5 (1997). At his jury trial, defendant's testimony from his first trial was read into evidence as part of the prosecution's case in chief. Defendant admitted during testimony at his first trial that he took his mother's gun, added more bullets, and raised it and fired at David Lamb. Defendant claimed that he then "blanked out." Defendant's entire defense was self-defense or diminished capacity. The only witness

he presented at his second trial was the clinical forensic psychologist whose testimony he had tried to introduce at the *Walker* hearing. She testified that although defendant reported no history of mental or emotional disturbances, she had concluded that he experienced "brief reactive psychosis" at the time of the shootings. The jury obviously disbelieved or discounted this testimony, because it convicted defendant of two counts of first-degree murder.

Under these facts, we find that even if the trial court had abused its discretion in not admitting the psychologist's testimony at the *Walker* hearing, and we reiterate that we do not believe this is so, we would find that the admission of defendant's confession at trial was harmless error. We decline to remand for a determination that defendant's custodial statement was knowingly and intelligently made under such circumstances.

C

Defendant contends that the trial court also erred in determining that his "formal" confession was voluntarily given. As noted above, the voluntariness prong cannot be resolved in defendant's favor absent evidence of police coercion or misconduct. *Garwood*, *supra* at 555. When reviewing a trial court's determination of voluntariness, this Court must examine the entire record and make an independent determination. *People v Brannon*, 194 Mich App 121, 131; 486 NW2d 83 (1992). However, deference is given to the trial court's assessment of the weight of the evidence and credibility of the witnesses, and the trial court's findings will not be reversed unless they are clearly erroneous. *Id.* After reviewing the record, we are sat-

isfied that defendant's confession was voluntary. Accordingly, the trial court did not err in refusing to suppress defendant's confession on this basis.

III

Defendant argues that reversal is required because of numerous instances of prosecutorial misconduct. The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). Questions involving prosecutorial misconduct are decided case by case, and this Court must evaluate each question within the context of the particular facts of the case. *People v Johnson*, 187 Mich App 621, 625; 468 NW2d 307 (1991). Appellate review of allegedly improper remarks is precluded absent an objection unless a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

A

Defendant first argues that a new trial is required because the prosecutor "repeatedly denigrated defense counsel in front of [the] jury." See *People v Wise*, 134 Mich App 82, 101-102; 351 NW2d 255 (1984); *People v Bairefoot*, 117 Mich App 225, 230-232; 323 NW2d 302 (1982). We disagree.

Viewed in context, the prosecutor did not argue that defense counsel lied or was trying to intentionally mislead the jury concerning the facts. Rather, the prosecutor was merely advancing his position that the defense theory was dependent upon testimony that

did not comport with other evidence at trial and, for that reason, should be rejected. While the prosecutor's remarks concerning whether defense counsel misstated the law relative to first-degree murder may have bordered on being improper, we conclude that the remarks did not deny defendant a fair trial in light of the prosecutor's concession that any misstatement was not intentional and the trial court's repeated instructions to the jury that it was to follow the law as instructed by the trial court. Finally, the prosecutor's statement during jury voir dire that defense counsel was "playing games" did not deny defendant a fair trial where it was brief in duration and was made in reference to a nonmaterial subject matter, that being who decides what charges to bring.

B

Relying on *People v Tyson*, 423 Mich 357, 373-376; 377 NW2d 738 (1985), together with *People v Williams*, 218 Mich 697; 188 NW 413 (1922), and *People v Cowles*, 246 Mich 429; 224 NW 387 (1929), defendant argues that the prosecutor engaged in numerous, improper attacks of his expert witness. Because defendant did not object to any of the challenged remarks at trial, appellate relief is precluded absent a miscarriage of justice.

The *Tyson* decision merely "reaffirmed the long-standing rule that a highly prejudicial attack of a defendant's expert witness without support on the record would require reversal." *People v Miller*, 182 Mich App 482, 486; 453 NW2d 269 (1990). Here, the prosecutor's remarks were based on evidence adduced at trial and do not rise to the egregious level of the remarks examined in *Tyson*. Indeed, similar

remarks have been upheld by this Court where, as here, they are supported by the record. See *Miller*, *supra* at 486; *People v Chatfield*, 170 Mich App 831, 834-835; 428 NW2d 788 (1988); *People v Williams*, 162 Mich App 542, 548-549; 414 NW2d 139 (1987); *People v Leighty*, 161 Mich App 565, 576-577; 411 NW2d 778 (1987).

We also reject defendant's claim that the prosecutor improperly attacked his defense expert during cross-examination. The record reveals that the prosecutor was merely testing the expert's familiarity with a textbook description of her diagnosis and with her own report. In neither instance did the prosecutor's questions rise to the level of a personal attack that prejudiced defendant's right to a fair trial.

C

Defendant further argues that the prosecutor made several improper appeals for sympathy and improperly urged the jurors to convict as part of their civic duty, thereby denying him a fair trial. See *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *People v Swartz*, 171 Mich App 364, 372; 429 NW2d 905 (1988); *Wise*, *supra* at 104. We disagree.

First, the prosecutor's statement that the victims "also have rights" was brief, it occurred during jury voir dire and was not repeated thereafter, and the trial court expressly found that the statement did not cause any prejudicial effect. Next, the question during closing argument, "Will you be able to live with yourself?" was not made in the context of an appeal for sympathy, nor in reference to any civic duty to convict defendant. Rather, it was made in the context of asking the jury to decide the case fairly on the basis

of the evidence. The prosecutor told the jury immediately beforehand: "[Y]ou as jurors don't owe an obligation to anybody. You do not owe an obligation to me and you don't owe an obligation to them." The prosecutor then requested the jury to "judge this case as you said you would on the basis of the facts, free of any sympathy, bias or prejudice." Next, the statement, "Nobody can undo the death of the Lambs," was an isolated remark made in the context of discussing defendant's state of mind. The remark that the Lambs "aren't here to say differently" was not intended as an appeal for sympathy, but rather was made in the context of arguing that there was no evidence, other than defendant's testimony, to support defendant's claim that the Lambs acted unprofessionally. The remark asking the jury to put themselves in Terry Lamb's position was made in the context of arguing the elements of premeditation and deliberation. The prosecutor was arguing that evidence of Terry Lamb's flight and terror was an indication that she posed no threat to defendant and, therefore, the fact that defendant pursued her and then shot her under those circumstances was indicative of a culpable state of mind. The prosecutor asked the jurors to put themselves in Terry Lamb's situation, not in an attempt to gain sympathy for her, but rather to evaluate the circumstances from her perspective for the purpose of inferring that she reasonably would have fled and expressed terror, thereby posing no threat to defendant. Finally, the remarks describing the fingernail impressions in Terry Lamb's hands, which did not receive an objection, were also made in the context of arguing the issue of premeditation and deliberation. Accordingly, a new trial is not warranted.

D

Defendant next argues that the prosecutor improperly characterized him as a liar and improperly vouched for the credibility of a prosecution witness during closing argument. A prosecutor may not vouch for the credibility of a witness, nor suggest that the government has some special knowledge that the witness is testifying truthfully. *Bahoda, supra* at 276. A prosecutor may, however, argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief. *People v Launsburry,* 217 Mich App 358, 361; 551 NW2d 460 (1996); *People v Jones,* 60 Mich App 681, 686; 233 NW2d 22 (1975).

Here, the challenged remarks regarding defendant were made in reference to the testimony and evidence presented at trial. The prosecutor was advancing his position that various claims made by defendant were not credible in light of contradictory evidence adduced at trial. Likewise, the prosecutor did not personally vouch for the credibility of the prosecution witness, but rather argued that the facts and evidence demonstrated that the witness was credible. In this context, the remarks were not improper.

E

Defendant next argues that the prosecutor improperly argued facts not in evidence when he stated during closing argument that it was not necessary to file a lawsuit before commencing a real estate forfeiture proceeding. *Stanaway, supra* at 686; *People v Lee, supra,* 212 Mich App 255. Defendant did not object to the challenged remarks at trial. Therefore, appellate relief is precluded absent a miscarriage of justice. Because the procedure for commencing a forfeiture

action was not pertinent to a determination of
defendant's guilt or innocence, and because a curative
instruction could have cured any prejudicial effect
caused by the remarks, we conclude that a miscar-
riage of justice has not been shown.

F

Finally, defendant argues that reversal is required
because, while some of the prosecutor's remarks
when viewed in isolation might not warrant reversal,
the cumulative effect of the prosecutor's improper
remarks denied him a fair trial. *People v McCoy*, 392
Mich 231, 240; 220 NW2d 456 (1974). We disagree.
Most of the alleged instances of misconduct involved
proper argument. The few remarks that could be
characterized as improper involved either insignifi-
cant subject matters or were cured by the trial court's
instructions. Viewed as a whole, the prosecutor's
remarks did not deprive defendant of a fair trial.

IV

Defendant next argues that he was denied a fair
trial by the admission of six allegedly gory photo-
graphs. Four of the photographs depicted David
Lamb's body at the crime scene and two were
autopsy photos of Terry Lamb. The decision to admit
or exclude photographs is within the sole discretion
of the trial court. *People v Mills*, 450 Mich 61, 76; 537
NW2d 909 (1995). Generally, photographs that are
merely calculated to arouse the sympathies or
prejudices of the jury should not be admitted. *Id.*
However, if a photograph is otherwise admissible for
a proper purpose, it is not rendered inadmissible
merely because it brings vividly to the jurors the

details of a gruesome or shocking accident or crime.
*Id.*

Among the disputed issues in this case were whether David Lamb confronted and approached defendant as defendant stepped out from his mother's bedroom with a gun and whether defendant then shot David Lamb in self-defense. The trial court determined that the location in the house where David Lamb was shot was a "crucial point" in the trial. Three of the photographs, all shot from a distance, depict the location of David Lamb's body in relation to the layout of the house. A fourth photograph depicts a set of car keys beside David Lamb's right hand and was introduced in support of the prosecution's theory that David Lamb was preparing to leave when he was shot. We find no abuse of discretion in the trial court's decision to admit these photographs.

The trial court also determined that intent, or defendant's state of mind, was a "real key" issue in this case. One of the autopsy photographs of Terry Lamb depicted alleged powder burns on her neck. The photograph was instructive in depicting the nature and extent of her injury and was probative of the issue of intent. See *Mills, supra* at 71 (noting that evidence of injury is admissible to show intent). Moreover, the trial court observed that the photograph depicted only the neck area, not any facial features, thereby diminishing any extraneous prejudicial effects. The other photograph in question depicted a missing fingernail on Terry Lamb's right hand. The police investigators found a broken fingernail in the vicinity of Terry Lamb's body, and the medical examiner detected fingernail imprints in the web between her left thumb and forefinger. This evidence was pro-

bative of whether Terry Lamb was experiencing fear and terror at the time she was shot, a fact that was of consequence to the action in light of the defense theory that defendant acted in self-defense or because of provocation by the victims. Accordingly, we find no abuse of discretion in the trial court's decision to admit the two autopsy photographs of Terry Lamb.

V

Defendant argues that he was denied a fair trial by the exclusion of evidence that he claims was crucial to his defense of diminished capacity. We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *People v McAlister*, 203 Mich App 495, 505; 513 NW2d 431 (1994).

First, defendant claims that the trial court erred in not permitting his defense expert, Dr. Sandra Paige, to testify that he was housed in the psychiatric unit at the county jail at the time of his psychological interview. We disagree. The trial court merely precluded testimony concerning defendant's physical location, not testimony concerning his mental state insofar as it related to the issue of diminished capacity at the time of the offense. Defendant did not present any evidence indicating that his physical location at the time of the interview was relevant to Dr. Paige's evaluation and opinion regarding the issue of diminished capacity at the time of the offense. Therefore, we find no abuse of discretion in the trial court's decision to exclude this testimony.

Defendant also argues that the trial court erred in refusing to allow Dr. Paige to testify about the reliability or accuracy of his police statement. We find this argument to be without merit. After entertaining testi-

mony outside the presence of the jury, the trial court ruled, largely in accordance with defense counsel's request, that Dr. Paige could testify that she gave little weight to defendant's police statements when forming her opinion and that she could also state her reasons for doing so, those being that the statements were not signed by defendant and that defendant denied making them. Although defendant now contends that Dr. Paige should have been permitted to render an opinion concerning the ultimate reliability or accuracy of defendant's statements, her testimony was never offered for that purpose and, in any event, she admitted that she did not know whether the statements were truly accurate or not. Thus, an abuse of discretion has not been shown.

VI

Defendant argues that the trial court abused its discretion in admitting a page from Terry Lamb's appointment book that listed the address of defendant's mother's house on the page for the date, and beside the approximate time, that she was killed. The appointment book was found by Terry Lamb's son approximately two days after her death.

As an initial matter, defendant argues that it was error to admit the appointment book because the book had been "ruled inadmissible" at defendant's first trial. Even if true, this fact did not preclude admission at defendant's second trial. Where a defendant's first trial ends in a mistrial, "whatever rulings were made by the court at the first trial may not in any way affect the rulings in the second." *People v Bowman*, 36 Mich App 502, 510; 194 NW2d 36 (1971).

Next, we reject defendant's claim that the appointment book was never properly authenticated. MRE 901(a) states that the requirement of authentication as a condition precedent to admissibility "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Under MRE 901(b)(1), a document may be authenticated by testimony from a witness with knowledge "that a matter is what it is claimed to be." Additionally, under MRE 901(b)(2), authentication of a writing may be based on "[n]onexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of litigation."

In this case, Terry Lamb's son testified that he was familiar with his mother's appointment book and had seen her use it "hundreds of times." He claimed that "every appointment that she had she wrote down in that book." He found the appointment book in a book-bag that belonged to his mother, which in turn was found inside his mother's locked car. The car was parked at his mother's office. The name "Terry Lamb" was written in the upper-right-hand corner of the book. Terry Lamb's son also testified that he was familiar with his mother's handwriting. While he stated that her handwriting sometimes varied, explaining that she sometimes wrote more quickly while on the phone, he agreed that the various entries in the appointment book all appeared to be in his mother's handwriting. In view of this testimony, the trial court did not abuse its discretion in deeming the appointment book authenticated.

Finally, the fact that the appointment book was found, not at the crime scene, but in Terry Lamb's car, which was parked at her office, did not preclude

its admission at trial. Regardless of where the book was found, it was admissible under the state of mind exception to the hearsay rule, MRE 803(3), as a declaration of where Terry Lamb intended to go. *People v Furman*, 158 Mich App 302, 316; 404 NW2d 246 (1987).

VII

Defendant argues that the trial court erred in denying his request for a complete transcript of his first trial. Following his convictions on retrial, appellate counsel filed a motion requesting that transcripts of defendant's first trial be provided on appeal. After determining that appellate counsel had received some transcripts of the first trial from trial counsel, and had received copies of other transcripts from the court file, the trial court denied appellate counsel's request for additional transcripts. In an argument that appears to present an issue of first impression in this state, defendant contends that his constitutional rights to due process and equal protection were violated by the refusal to provide a complete transcript of his first trial for use on appeal of the second trial. We disagree.

Although defendant relies principally on *Britt v North Carolina*, 404 US 226, 227; 92 S Ct 431; 30 L Ed 2d 400 (1971), that case involved a request for a transcript of a mistrial for use at the defendant's retrial, not, as here, on appeal following a second trial. Therefore, we conclude that *Britt* does not control this case. Cf. *Jackson v Estelle*, 672 F2d 505 (CA 5, 1982); see also *Tague v Puckett*, 874 F2d 1013, 1014 (CA 5, 1989).

While an indigent defendant is entitled to a free transcript on appeal, *Griffin v Illinois*, 351 US 12; 76 S Ct 585; 100 L Ed 891 (1956), the state is not obligated to automatically supply a complete verbatim transcript. Rather, the state is only required to furnish a "record of sufficient completeness" for adequate consideration of the defendant's claims of error. *Mayer v Chicago*, 404 US 189, 194; 92 S Ct 410; 30 L Ed 2d 372 (1971); *Draper v Washington*, 372 US 487, 497; 83 S Ct 774; 9 L Ed 2d 899 (1963). A complete transcript is not required where the defendant fails to make out a "colorable need" for a complete transcript. *Mayer, supra* at 195.

In this case, defendant argues that a complete transcript of his first trial is necessary because some of the trial court's rulings at the first trial were reversed or modified at the second trial. It is irrelevant, however, that some of the trial court's rulings may have differed from those of the first trial, because "whatever rulings were made by the court at the first trial may not in any way affect the rulings in the second." *Bowman, supra* at 509-510. Regardless of what rulings were made at the first trial, defendant was convicted solely on the basis of the evidence presented and legal rulings rendered at his second trial. Defendant has been furnished with a complete transcript of this second trial, thereby enabling full review of all rulings made at that trial. There has been no claim that the transcript of the second trial is insufficient to permit adequate review of any alleged erroneous ruling at the second trial.

Defendant further argues that a complete transcript of his first trial is necessary to determine whether witnesses who testified at both trials were adequately

impeached with testimony from the first trial. However, defendant does not allege that the testimony of any given witness changed significantly between the two trials, thereby subjecting the witness to possible impeachment. A state is not required to furnish complete transcripts so that defendants and their counsel may conduct "fishing expeditions" to seek out possible errors at trial. *Moore v Wainwright*, 633 F2d 406, 409 (CA 5, 1980). Moreover, appellate counsel did receive a partial set of transcripts from defendant's first trial, containing the testimony of several witnesses, and there is no allegation that trial counsel was deficient in his cross-examination of any of those witnesses at the second trial. We find that defendant failed to make out a "colorable need" for a complete transcript. We conclude, therefore, that the trial court did not err in denying defendant's request for additional transcripts from his first trial for use on appeal after his second trial.

For all of the reasons stated herein, we affirm defendant's convictions.

Smolenski, P.J., concurred.

Fitzgerald, J. (*concurring in part and dissenting in part*). I respectfully dissent from the majority's conclusion in issue II-B that the trial court did not err in refusing to receive the testimony of a clinical psychologist concerning defendant's capacity to waive knowingly and intelligently his *Miranda*[1] rights.

As noted by the majority, whether a waiver of *Miranda* rights is voluntary and whether an otherwise voluntary waiver is knowing and intelligent are

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

separate questions. *People v Cheatham*, 453 Mich 1; 551 NW2d 355 (1996); *People v Garwood*, 205 Mich App 553, 555-556; 517 NW2d 843 (1994). While the voluntariness prong is determined solely by examining police conduct, a statement made pursuant to police questioning may be suppressed in the absence of police coercion if the defendant was incapable of knowingly and intelligently waiving his constitutional rights. *Garwood, supra.* Here, the trial court failed to distinguish between the voluntary prong and the knowing and intelligent prong of the waiver analysis and, consequently, erred in refusing to permit defendant's expert to testify regarding defendant's mental capacity to waive knowingly and intelligently his *Miranda* rights at the time of his police interrogation. Because of its misinterpretation of the relevant law, the trial court did not have the opportunity to consider the testimony of defendant's expert in determining whether defendant's confession was voluntary. Hence, the proper remedy is to remand this matter to the trial court for continuation of the *Walker* hearing relative to whether defendant knowingly and intelligently waived his *Miranda* rights. *Garwood, supra* at 559.

I concur with the remainder of the majority opinion.