# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MATTHEW ELIOT CRUMLEY,

      Defendant-Appellant.

UNPUBLISHED
June 28, 2016

No. 325712
Macomb Circuit Court
LC No. 2013-001233-FC

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM.

Defendant was convicted, after a jury trial, of armed robbery, MCL 750.529, and third-degree fleeing and eluding a law enforcement officer, MCL 257.602a(3)(a). Defendant was sentenced, as a second habitual offender, MCL 769.10, to 120 to 240 months for armed robbery and 36 to 90 months for fleeing and eluding. Defendant now appeals as of right. For the reasons set forth in this opinion, we affirm defendant's convictions; however, we remand to the trial court for a determination of whether resentencing is warranted under *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), and *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).

## I. BACKGROUND

On March 21, 2013 at a CVS store in Warren, Michigan, defendant entered the store with his face covered. The employees on duty that evening immediately noticed defendant's presence and because he was covering his face, went into the back room to alert their manager that a suspicious person was in the store. The manager called 9-1-1 while another employee went to the front of the store where he found defendant behind the cash register. When the employee went up to defendant, defendant showed the employee what appeared to be a steak knife with a black handle and a serrated blade. Defendant held the knife near the employee's abdomen and demanded that the employee open the cash register. The employee, fearing that he would be attacked if he did not comply, opened the cash register. Defendant took the cash and some cigarettes and left the store.

Police, responding to the 9-1-1 call, arrived shortly after defendant had exited the store, however they were able to catch-up to him and a chase ensued. The chase began in Warren and continued on I-75 when defendant went the wrong way on I-75, causing a police cruiser accident. The chase ended in Hamtramck when defendant abandoned his vehicle and tried to

-1-

hide underneath a nearby deck. As police tried to pull defendant from underneath the deck, he again resisted but was apprehended around 2:30 a.m.

Defendant complained of heart problems and told police that he had taken drugs, so police took defendant to the hospital. Following defendant's release from the hospital, he was advised of his rights under *Miranda*,[1] and signed a *Miranda* waiver. Thereafter, defendant confessed to the CVS robbery. He was also accused of committing at least two other armed robberies in neighboring towns, including one in Hazel Park. As a result, the Warren Police Department contacted the Hazel Park Police Department when defendant was in custody. After being interviewed by the Warren detectives, Detective Boucher from the Hazel Park Police Department also interviewed defendant. Before trial, defense counsel requested a *Walker* hearing, arguing that defendant's videotaped statement to Detective Boucher, which included admissions regarding the Hazel Park armed robbery and the CVS robbery at issue, was not voluntarily given as defendant was "still feeling the effects" of the drugs he had ingested before his arrest, defendant had not slept, defendant had been "beat" by the Warren police, and had briefly requested a lawyer before the interview continued. After viewing the videotaped statement, the trial court allowed the statement admitted as evidence.

## II. *CROSBY* REMAND

On appeal, defendant argues that he is entitled to resentencing under *Lockridge* because the trial court relied on facts not admitted by defendant or found by the jury to score Offense Variable (OV) 1 and OV 4 of the sentencing guidelines. Because this issue is preserved, it is reviewed for harmless error beyond a reasonable doubt. *People v Terrell*, 312 Mich App 450, 464; ___NW2d___ (2015). Whether a Sixth Amendment violation occurred is a question of constitutional law, which this Court reviews de novo. *Lockridge*, 498 Mich at 373.

In *Lockridge*, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient to the extent that "the guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013)]." *Lockridge*, 498 Mich at 364. To remedy this violation, the Court held that a guidelines range calculated in violation of *Alleyne* is advisory only. *Id*. at 365.

As explained in *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 752 (2015), the *Lockridge* Court found that in cases "in which (1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced[,] . . . because the defendant suffered no prejudice from any error, there is no plain error and no further inquiry is required." The *Lockridge* Court further held that

> all defendants (1) who can demonstrate that their guidelines minimum sentence
> range was actually constrained by the violation of the Sixth Amendment and (2)

---

[1] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry. [*Lockridge*, 498 Mich at 395.]

Although the *Lockridge* Court adopted this procedure in the context of addressing an unpreserved claim of error, this Court held in *Stokes*, 312 Mich App at 200, that the *Crosby* remand procedure also applies "to both preserved and unpreserved errors."

Defendant received a total of 30 OV points, placing him in OV Level II (20 to 39 points) on the applicable sentencing grid and a total of 35 Prior Record Variable (PRV) points, placing him in PRV level D, with a guidelines range of 81 to 168 months. MCL 777.62. This guidelines range was based on the scoring of PRV 2, PRV 6, PRV 7, OV 1, OV 2, and OV 4. The trial court assessed 15 points for OV 1 (aggravated use of a weapon), MCL 777.22, and 10 points for OV 4 (psychological injury to a victim), MCL 777.34. Defendant argues that the points assessed for OVs 1 and 4 were improperly assessed against defendant, as the factual basis necessary to score each was not admitted by defendant or found beyond a reasonable doubt by the jury.

The trial court assessed 15 points under OV 1. OV 1 involves the aggravated use of a weapon and 15 points is appropriate if "a firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife . . . ." MCL 777.31(1)(c). Defendant was convicted of armed robbery and third-degree fleeing and eluding. In order to obtain a conviction for armed robbery, a prosecutor must prove that

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

Thus, to convict defendant of armed robbery, the jury was only required to find beyond a reasonable doubt that defendant was armed with a weapon—not that he pointed it at the CVS employee working during the robbery, or threatened him with it. *People v Smith*, 478 Mich 292, 319; 733 NW2d 351 (2007); MCL 750.529. Moreover, to convict defendant of armed robbery, it was not necessary for the jury to find that the CVS employee had a reasonable apprehension of immediate battery. Thus, the jury did not make any finding related to defendant's armed robbery conviction which would support a 15 point score under this OV. See *Stokes*, 312 Mich App at 194.

The elements of third-degree fleeing and eluding are

(1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer, with his hand, voice, siren, or emergency lights must have ordered

the defendant to stop, (4) the defendant must have been aware that he had been ordered to stop, (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights among other things, and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision, or the defendant must have been previously convicted of certain prior violations of the law as listed in MCL 750.479a(3)(c) . . . . [*People v Grayer*, 235 Mich App 737, 741; 599 NW2d 527 (1999), citing MCL 750.479a(3).[2]]

Thus, to convict defendant of fleeing and eluding the jury did not make any finding related to a weapon or apprehension of immediate battery. As a result, although the CVS employee testified that defendant pointed the knife toward his abdomen, this fact was not necessary to support defendant's convictions, the jury did not render any finding and defendant made no admissions regarding that matter. As a result, the 15 points assessed for OV 1 constitute judicial fact-finding outside the scope of the jury verdict.

The trial court assessed 10 points under OV 4. OV 4 covers psychological injury and 10 points is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). Zero points are assessed when "[n]o serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(b).

The CVS employee testified that defendant threatened him with a knife and that he was scared during the robbery. However, there was no testimony regarding whether the CVS employee suffered psychological injury and, as shown above, psychological injury is not an element of either crime the jury found defendant guilty of. Thus, the facts necessary to support a score of 10 points under this OV were not necessarily found by the jury. Additionally, while in defendant's description of the offense in the Presentence Investigation Report (PSIR) defendant admitted he "endangered, victimized, and terrorized" people during the robbery, defendant did not admit facts to support a finding that The CVS employee suffered psychological injury. As a result, the 10 points assessed for OV 4 constitute judicial fact-finding outside the scope of the jury verdict.

In sum, the 15 points assessed for OV 1 and 10 points assessed for OV 4 were improperly assessed against defendant, as the factual basis necessary to score them were not found beyond a reasonable doubt by the jury or admitted by defendant. Defendant received a total of 30 OV points, placing him in OV Level II (20 to 39 points) on the applicable sentencing grid with a guidelines range of 81 to 168 months. MCL 777.62. Deducting the 15 points assessed under OV 1 and the 10 points assessed under OV 4 would "change the applicable guidelines minimum sentence range," *Lockridge*, 498 Mich at 399, and put defendant in OV level I (0 to 19) with a

---

[2] When this Court decided *Grayer*, fleeing and eluding was proscribed by MCL 750.479a. Essentially identical language now appears in MCL 257.602a.

guidelines range of 51 to 106 months. Therefore, defendant is entitled to a *Crosby* remand under *Lockridge*.

## III. STANDARD 4 BRIEF

Next, in his Standard 4 Brief, defendant argues that the trial court abused its discretion in denying his motion to suppress his police statement. Defendant argues that his *Miranda* waiver was not voluntary. A trial court's determination that a waiver was knowingly, intelligently, and voluntarily made is reviewed de novo. *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010).

The United States and Michigan Constitutions prohibit compelled self-incrimination. US Const, Am V; Const 1963, art 1, § 17; *People v Elliott*, 494 Mich 292, 301 n 4; 833 NW2d 284 (2013). In order to use a defendant's incriminating statements resulting from a custodial interrogation, the prosecution must demonstrate that proper procedural safeguards were in place to protect the right against self-incrimination. See *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. A defendant may waive his rights if the waiver is voluntary, knowing, and intelligent. *Id*. "[T]he analysis must be bifurcated, i.e., considering (1) whether the waiver was voluntary, and (2) whether the waiver was knowing and intelligent." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005).

Defendant's argument is focused on the voluntariness of the confession and *Miranda* waiver, not on whether the *Miranda* waiver was knowing and intelligent. "[W]hether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion." *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000). The prosecution bears the burden of proving voluntariness by a preponderance of the evidence. *Id*. at 634. "The test of voluntariness is whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired." *People v Givans*, 227 Mich App 113, 119, 121; 575 NW2d 84 (1997). Regardless of whether express or implied, Miranda made clear that any waiver must be "made voluntarily, knowingly and intelligently." 384 US at 475.

To determine whether a defendant's statement was voluntary, the court considers the totality of the circumstances, including:

> [1] the age of the accused; [2] his lack of education or his intelligence level; [3] the extent of his previous experience with the police; [4] the repeated and prolonged nature of the questioning; [5] the length of the detention of the accused before he gave the statement in question; [6] the lack of any advice to the accused of his constitutional rights; [7] whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; [8] whether the accused was injured, [9] intoxicated or drugged, or in ill health when he gave the statement; [10] whether the accused was deprived of food, sleep, or medical

-5-

attention; [11] whether the accused was physically abused; and [12] whether the suspect was threatened with abuse. [*People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988).]

No single factor is conclusive, *id.*; *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998), however, voluntariness "cannot be resolved in [a] defendant's favor absent evidence of police coercion or misconduct," *People v Howard*, 226 Mich App 528, 543; 575 NW2d 16 (1997). While whether the accused was physically assaulted is considered in the voluntariness analysis, if the accused was physically abused by the police a *Miranda* waiver is still voluntary if "there is no causal connection between the events at the time of arrest and the giving of a subsequent statement . . . [and] the other circumstances show that the defendant gave his confession freely and voluntarily." *People v Wells*, 238 Mich App 383, 389; 605 NW2d 374 (1999) (internal citations omitted). "However, if an earlier beating is particularly severe, if the abuse continues until the time a confession is given, if the same officers are involved in both the beating and the procuring of the statement, or if there is no change in the setting, then courts may find that a confession was involuntarily given." *Id.*

Defendant claims that he was beaten at the time of his arrest and that the beating induced his later waiver of *Miranda* rights and statement to Sergeant David Kriss. However, the police officers involved in defendant's arrest testified that they struck defendant when he refused to show them his hands or come out from beneath the deck, which they claim necessitated the application of force to effectuate his arrest. Moreover, there is nothing in the record to suggest defendant was seriously wounded and the three police officers who used force in order to effectuate defendant's arrest were not involved in defendant's later police interview. Additionally, the physical assault on defendant occurred on a side street in Hamtramck, but defendant's interview with Sergeant Kriss occurred hours later at the Warren Police Department. Thus, because the police provided an explanation for defendant's physical assault, which was unrelated to procuring a statement from defendant, and the record establishes that there was no causal link between the physical force used by the police and defendant's statement and *Miranda* waiver, the police's physical assault against defendant did not amount to police coercion or make his *Miranda* waiver involuntary. See *Wells*, 238 Mich App at 388 (finding where the "defendant was injured during the course of his arrest when he attempted to retrieve an assault rifle and resisted arrest, thus necessitating an application of force to subdue defendant and effectuate the arrest . . . there was no causal link between defendant's statement and the events surrounding defendant's arrest," and thus, "the physical assault at the time of arrest did not render the defendant's subsequent statement involuntary.")[3] Thus, because defendant failed to demonstrate

---

[3] Additionally, to the extent defendant is arguing that his statements were not voluntary because he was injured or in pain, we note that courts have upheld waivers under many circumstances in which suspects were injured or in pain as long as they were alert and responsive during questioning. See, e.g., *Reinert v Larkins*, 379 F3d 76 (3rd Cir 2004), upholding defendant's waiver of *Miranda* even though the interrogation took place in an ambulance as the defendant was being taken to the hospital; *United States v Cristobal*, 293 F3d 134, 142 (4th Cir 2002) upholding a waiver by a defendant suffering from postsurgical pain in spite of being on a

what defendant characterizes as the police "beating" affected the voluntariness of his *Miranda* waiver, the trial court did not err in denying defendant's motion to suppress his statement.

Last, in his Standard 4 Brief on Appeal, defendant contends that he was denied the effective assistance of counsel. Defendant claims that defense counsel was ineffective when he 1) failed to seek a proper identification line-up after The CVS employee could not identify defendant at the preliminary examination, 2) failed to obtain an expert in DNA and fingerprint analysis and obtain an expert in involuntary confessions, and 3) "admitted that he never went to look for physical evidence and even mentioned erroneously that defendant[] was caught with stolen items to the jury during closing arguments."

To preserve a claim of ineffective assistance of counsel, a defendant must make a motion for a new trial or an evidentiary hearing with the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant never moved for a new trial or a requested *Ginther*[4] hearing in the trial court. Thus, this issue is unpreserved. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, the trial court's findings of fact are reviewed for clear error and the questions of constitutional law are reviewed de novo. *Id*. Unpreserved claims of ineffective assistance of counsel can still be reviewed, but review is limited to errors apparent in the record below. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 US at 694.

Effective assistance of counsel is presumed, and the defendant bears a substantial burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that failure was prejudicial to the defendant. *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), remanded on other grounds 436 Mich 866 (1990). Counsel's strategic judgments are afforded deference, *Wiggins v Smith*, 539 US 510, 521-522, 528; 123 S Ct 2527; 156 L Ed 2d 471 (2003), but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation, *Wiggins*, 539 US at 521-522; *Trakhtenberg*, 493 Mich at 52-55.

---

narcotic painkiller because the medication apparently did not affect the defendant's thought process.

[4] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

First, defendant argues that defense counsel was ineffective when he failed to seek a "proper identification line-up" after "[The CVS employee] could not identify defendant[] at the preliminary examination." However, defendant's claim is inconsistent with the record as the bind over form in the lower court file indicates that defendant waived his preliminary examination. Moreover, The CVS employee never identified defendant. At trial, The CVS employee testified that, although he got a split second look at the assailant's face, he could not identify the man or give a physical description. Instead, three Warren police officers identified defendant as the assailant. The CVS employee never identified defendant and, therefore, defense counsel had no reason to challenge "the identification procedure" with regard to The CVS employee. Because counsel is not required to argue meritless positions, *People v Ericksen*, 288 Mich App 192; 793 NW2d 120 (2010), counsel's failure to seek a "proper identification line-up" did not fall below an objective standard of reasonableness, *Strickland*, 466 US at 688.

Second, defendant argues that defense counsel was ineffective when he failed to obtain an expert to testify regarding involuntary confessions. However, defendant has neither overcome the strong presumption that counsel's performance was trial strategy nor made any showing that, but for counsel's failure to call an expert in involuntary confessions, the result of the proceeding would have been different. Rather than calling an expert in involuntary confessions, defense counsel raised the issue of the voluntariness of defendant's statement through the cross-examination of Sergeant Kriss, which was a reasonable trial strategy. Moreover, defendant has merely speculated that an expert in involuntary confessions could have provided favorable testimony. Thus, even if we were to presume that trial counsel was ineffective, defendant has failed to show that the retention of an expert would have altered the outcome of the trial. Accordingly, defendant is not entitled to relief on this issue.

Third, defendant argues that defense counsel was ineffective when he failed to obtain "an expert to test for DNA and fingerprints in the motor vehicle and contents to prove that defendant[] was never inside of the [white van] used as a getaway vehicle." However, contrary to defendant's argument, the record indicates that the police took fingerprints from the van and that a "fingerprint report" was produced and provided to defense counsel. Not only was fingerprinting completed, but the fingerprints recovered from a cellphone found during the investigation belonged to defendant. Thus, defense counsel had no reason to retain an expert to conduct fingerprinting when it had already occurred. Because counsel is not required to argue meritless positions, *Ericksen*, 288 Mich App at 192, counsel's failure to obtain an expert to conduct fingerprinting did not fall below an objective standard of reasonableness, *Strickland*, 466 US at 688.

Defendant asserts that defense counsel was ineffective when he "admitted that he never went to look for physical evidence and even mentioned erroneously that defendant[] was caught with stolen items to the jury during closing arguments." However, again, defendant's arguments are inconsistent with the record. First, there is no indication in the record that defense counsel stated that he failed to look for physical evidence. Second, the *prosecutor* made the statement in closing argument, which defendant attributes to defense counsel, that defendant "was caught in the act, he was caught with the goods, he was caught with the money, the cigarettes . . . ." Thus, these allegations have no merit.

Last, although the parties do not raise the issue, this Court notes that the judgment of sentence lists defendant's sentence as 20 to 240 months for armed robbery. However, at sentencing, the trial court sentenced defendant to 120 to 240 months for armed robbery. Thus, if the trial court does not resentence defendant under *Lockridge*, it should correct the clerical error in the judgment of sentence to reflect defendant's correct sentence for armed robbery. MCR 6.435(A); MCR 7.216(A)(7).

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Henry William Saad
/s/ Stephen L. Borrello