*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MAX ALLEN SINCLAIR,

Defendant-Appellant.

UNPUBLISHED
February 13, 2026
11:36 AM

No. 372530
Oceana Circuit Court
LC No. 2023-016185-FH

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

Defendant, Max Allen Sinclair, appeals as of right his jury conviction of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a), for which the trial court imposed a six-month term of imprisonment. On appeal, he contends that remarks made by the prosecutor during closing argument, specifically comments characterizing defendant's conduct and referencing the consistency of the victim's account, deprived him of a fair trial. We affirm.

## I. BACKGROUND

This case arises from criminal sexual contact against then-15-year-old LP by then-53-year-old defendant. The underlying facts are not challenged on appeal. LP testified that after meeting at the gym, defendant asked him for help working out and invited him to breakfast multiple times. After one workout, defendant offered to give LP a massage, which progressed into defendant touching LP's lower back, buttocks, and inner thighs, as well as kissing LP's muscles. LP immediately reported the incident to his mother, who took him to the police station. At the police station, LP recounted the event to City of Hart Police Department Officer Kyle Moore.

At trial, LP testified without objection that what he told Officer Moore on the day of the incident was consistent with his testimony at trial. Officer Moore testified that, after speaking with LP, he interviewed defendant, who denied that he touched LP for a sexual purpose. A recording of that interview was played for the jury, but defendant did not testify.

During closing arguments, the prosecution argued that it "[s]eem[ed] weird" that defendant asked LP to breakfast, stated that the massage "[got] weird from there," and argued that

-1-

defendant's actions were "not normal behavior." After closing arguments and jury instructions, the jury found defendant guilty. Defendant now appeals.

## II. STANDARD OF REVIEW

The sole issue on appeal is whether the prosecutor's statements during closing argument amounted to misconduct that denied defendant a fair trial. Defendant contends that he was denied his right to a fair trial because the prosecutor made prejudicial remarks, expressed a personal opinion on the merits of the case, and improperly bolstered trial testimony.

"[T]o preserve an issue of prosecutorial misconduct,[1] a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant did not object or request a curative instruction, we review for plain error affecting substantial rights. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). To obtain relief under that standard, the defendant must show that "(1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected the defendant's substantial rights." *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). Even if those requirements are met, reversal is warranted only when the error "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (cleaned up). An unpreserved claim of prosecutorial misconduct will not warrant relief unless the prejudicial effect was so great that it could not have been cured by an appropriate instruction. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

## III. ANALYSIS

Applying those principles, we conclude that the prosecutor's challenged remarks, viewed in context, did not constitute plain error affecting defendant's substantial rights and did not deprive defendant of a fair trial.

The test for prosecutorial error is whether the defendant has been denied a fair trial. *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). The defendant bears the burden of demonstrating that the error resulted in a miscarriage of justice. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Claims of prosecutorial error "are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Prosecutorial comments "must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence

---

[1] "Although the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (cleaned up).

admitted at trial." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). Guided by these principles, we address defendant's arguments.

Defendant first argues that the prosecutor made prejudicial remarks by referring to defendant's conduct as "weird." Although a prosecutor may not make "intemperate and prejudicial remarks" about a defendant, *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995), a prosecutor is not required to use the "blandest of all possible terms" when arguing a case, *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). Prosecutors are "generally . . . accorded great latitude regarding their arguments and conduct," *Cooper*, 309 Mich App at 90 (cleaned up), and may argue the evidence and reasonable inferences from it, *Bahoda*, 448 Mich at 282-283.

Defendant challenges the following remarks:

> [LP] told you that after working out with this guy, he meets this guy working out at the gym, and the guy sort of mutual, like, let me help you out. Hey, can you help me out. And the guy's, like, asking him out to breakfast and asking him to, like, help him workout and things like that, *and, frankly, that's weird*.

> And we can all sit here and say, like, maybe you should have said no, or maybe you have been in that situation, but he's just a kid. He's a nice kid, who is trying to help somebody out. He's trying to be nice. We teach our kids to be nice. We teach our kids to be respectful of adults and be kind and compassionate people. And so that's what [LP], he was doing. He was just being a good kid, 'cause that's what he is. And the defendant starts asking him, like, hey let's go to breakfast. *Seems weird*.

> And I don't know any other way to describe that. I don't take teenagers to breakfast. *It's weird*. [Emphasis added.]

When read in context, these statements described defendant's conduct, not his character. The prosecutor used the word "weird" to characterize defendant's actions in asking a minor to breakfast, not to denigrate defendant personally. Viewed as a whole, the remarks focused on specific conduct relevant to the charged offense.

The prosecutor similarly described defendant's conduct during the massage as "not normal behavior" and "bizarre" while arguing that the touching was for a sexual purpose:

> He starts touching him down the buttocks, across the leg. [LP] showed you across the left thigh, with a hand up in the crevice area up to the crotch. He pulls down his shorts and starts touching his buttocks, and then, when he's rubbing his lats, kisses him.

> *That's just really not normal behavior*. So [LP] very clearly demonstrated to you the elements of a criminal sexual conduct.

* * *

> [I]f you touch somebody on their upper thigh, crotch, or buttocks area, and it's for a sexual purpose, that's a criminal sexual conduct in the fourth degree. Well, [LP] clearly demonstrated to you that he was touched in those areas, okay? So now the question, was it for a sexual purpose?
>
> If it wasn't for a [sexual] purpose, why is he kissing his back? *It's just bizarre*. [Emphasis added.]

To establish CSC-IV, the prosecutor was required to argue that the touching was for a sexual purpose. See MCL 750.520e(1)(a) (CSC-IV); MCL 750.520a(q) (defining "sexual contact"). In doing so, the prosecutor permissibly described defendant's conduct and argued reasonable inferences from the evidence. The remarks did not amount to personal attacks or improper character assassination and therefore did not deprive defendant of a fair trial.

Defendant next contends that the prosecutor improperly expressed a personal opinion by stating, "I don't take teenagers to breakfast. It's weird." "It is improper for a prosecutor to express a personal opinion about a case by suggesting that she has some special knowledge, unknown to the jury, that the defendant is guilty." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 14, citing *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). But the prosecutor's remark here did not imply special knowledge or assert defendant's guilt. Rather, it was rhetorical commentary offered to support an inference drawn from the evidence. Accordingly, the statement did not constitute prosecutorial error.

Finally, defendant asserts that the prosecutor improperly bolstered LP's testimony by referencing its consistency with statements LP made to Officer Moore.

A prosecutor "may not argue facts not in evidence or mischaracterize the evidence presented . . . ." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). Nor may a prosecutor vouch for the credibility of a witness "to the effect that he has some special knowledge concerning a witness' truthfulness." *Bahoda*, 448 Mich at 276. A prosecutor may, however, "argue from the facts that a witness is credible . . . ." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Further, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Such arguments "are not improper when based on the evidence, even if couched in terms of belief or disbelief." *People v Unger*, 278 Mich App 210, 240; 749 NW2d 272 (2008).

Defendant argues that the prosecutor improperly bolstered LP's testimony by asserting that it was "[p]retty consistent with what he told Officer Moore and what he told you here today." During rebuttal, the prosecutor further argued that LP had no reason to lie, stating, "[i]f he's making it up, why . . . There's nothing on the record to support any reason why he . . . would have immediately gone and told a story that wasn't accurate." The prosecutor continued, "[LP] went

-4-

straight to Officer Moore. Officer Moore said, yeah, he's in shock. This had just happened, but he told a consistent, straightforward account of what happened."

First, the prosecution's statement that LP's testimony was "[p]retty consistent" with what he had previously told Officer Moore does not rely on a prior extrajudicial statement. During his testimony, LP was asked, without objection, whether he told Officer Moore the same facts to which he had testified. LP answered, "Yes, sir, I did." Therefore, although defendant is correct that the specific content of LP's conversation with Officer Moore was not admitted into evidence, the prosecutor's argument was grounded in LP's own testimony. The prosecution did not improperly vouch for LP's credibility or suggest specialized knowledge regarding LP's truthfulness. Rather, the challenged remarks were based on evidence presented at trial. See *Howard*, 226 Mich App at 548.

Second, assuming for the sake of argument that the prosecutor alluded to "some special knowledge" concerning LP's truthfulness, *Bahoda*, 448 Mich at 276, or otherwise mischaracterized LP's testimony regarding consistency, any prejudice was cured by the trial court's instructions. In *Meissner*, this Court held that reversal was not required "because the trial court clearly instructed the jury that 'the lawyers' statements and arguments are not evidence.' " 294 Mich App at 457 (cleaned up). "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

In this case, the trial court instructed the jury regarding both the nature of evidence and witness credibility. With respect to evidence, the trial court stated:

> Evidence includes only the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence. . . .
>
> The lawyers' statements and arguments and any commentary are not evidence. They are only meant to help you understand the evidence and each side's legal theories.
>
> You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge.

As to credibility, the court instructed, in part, "You must decide which witnesses you believe and how important you think their testimony is."

Defendant has not explained why the instructions given were insufficient to cure any potential prejudice. Nor does he assert that additional instruction would not have cured potential prejudice. See *Stanaway*, 446 Mich at 687. Because there is no basis to conclude that the trial court's instructions—or an additional instruction—would have failed to cure any potential prejudice arising from the prosecutor's remarks, defendant has not established entitlement to relief under the plain-error standard. See *id*.

Affirmed.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman