*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHNNY RAY BROWN JR,

        Defendant-Appellant.

UNPUBLISHED
March 19, 2026
9:16 AM

No. 367786
Chippewa Circuit Court
LC No. 2022-005631-FH

Before: KOROBKIN, P.J., and YATES and FEENEY, JJ.

PER CURIAM.

While defendant, Johnny Ray Brown Jr., was on bond awaiting trial, he tested positive for a tricyclic antidepressant. Soon after defendant was informed that he would be taken to jail for the positive drug test, defendant fled from the building and was later apprehended by a police officer. Defendant was subsequently convicted by jury verdict of resisting or obstructing an officer, MCL 750.81d(1). On appeal, defendant contends that inadmissible evidence was presented at trial, that the jury instructions were inadequate, that the prosecution engaged in misconduct, and that his trial attorney was ineffective. We affirm.

## I. FACTUAL BACKGROUND

On April 4, 2022, defendant was on bond in an unrelated criminal case, and he was required as a condition of bond to undergo drug testing. On that day, defendant reported to his tether officer, Chippewa County Deputy Sheriff Michael Troyer, who administered a drug test. Defendant tested positive for a tricyclic antidepressant even though he had no prescription for that antidepressant. Deputy Troyer asked defendant about the positive result, and defendant said that had not taken the tricyclic antidepressant, but his girlfriend uses the drug. Deputy Troyer asked defendant to sign a drug book to confirm the positive test result, and the deputy informed defendant that he would be taken to jail because of his positive drug test. In response, defendant "started to sign the book[,]" but then "he grabbed his receipt and ran down the hallway." Deputy Brad LaCross "yelled a couple of times" telling defendant to stop, but defendant just "kept running" and "exited the building out the exit door."

-1-

After defendant ran away from the tether office, Undersheriff Greg Postma saw defendant "running out the door" with "a thin piece of paper in his hand." Undersheriff Postma watched him run "out towards Bingham," and then defendant "turned the corner and went right, which seemed odd." Undersheriff Postma recognized the paper in defendant's hand as a "tether receipt," and he thought: "something's not right here; this person shouldn't be exiting that door, they're running and they're holding a tether receipt." Undersheriff Postma "ran back to the door and was met at the door by . . . Deputy LaCross," who asked: "did you see Johnny Brown run by?" Undersheriff Postma "[g]ot in [a] patrol car [and] activated the lights and siren." Then he drove off in pursuit of defendant. Shortly thereafter, Undersheriff Postma saw defendant run across the street and into "the parking lot of Central Savings Bank." Undersheriff Postma ordered defendant to stop, which defendant did. Undersheriff Postma arrested defendant after recognizing him as the person who ran out of the tether office moments earlier. At the time of the arrest, defendant still was holding the tether receipt in his hand.

Defendant was tried from start to finish in a single day. Four witnesses testified at the trial: Deputy Troyer; Deputy LaCross; Undersheriff Postma; and defendant. According to defendant's testimony, he went to the tether office as a routine matter on April 4, 2022, took a drug test as he was required to do twice each week, waited for the test results, received a receipt of the test results, and left the building because, in his words, "they never told me not to leave." Defendant summed up the incident by confirming that he "didn't run" and he was not "told to stop." After hearing all the witnesses testify, the jury convicted defendant of resisting or obstructing an officer in violation of MCL 750.81d(1). The trial court sentenced defendant for that crime, as a fourth-offense habitual offender, MCL 769.12, to serve 34 months to 15 years in prison. Defendant now appeals of right his conviction, but not his sentence.

## II. LEGAL ANALYSIS

On appeal, defendant presents several issues. First, he asserts that the trial court erred when it allowed testimony about his prior involvement with law-enforcement officers. Second, he faults the trial court for giving the jury inadequate instructions about the charged crime. Third, he argues that the prosecutor committed reversible error during closing argument and while cross-examining him. Defendant concedes that his trial attorney did not object to any of those alleged errors during the trial, but he blames his attorney for providing deficient representation by failing to object. We will address each of those arguments in turn.

## A. DEFENDANT'S PRIOR INVOLVEMENT WITH LAW-ENFORCEMENT OFFICERS

Defendant contends that the trial court improperly allowed testimony about prior contacts he had with police officers. Defendant further insists that that error was compounded by questions from the prosecutor about defendant's previous experiences on tether. Ordinarily, the admission of evidence is subject to review for abuse of discretion. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). Here, however, defendant offered no contemporaneous objection to any of the evidence challenged on appeal. To preserve an evidentiary issue for appeal, the party contesting the admission of evidence on appeal "must object at trial and specify the same ground for objection that it asserts on appeal." *Id*. at 252. Therefore, "a party asserting evidentiary error who fails to object at a time that gives the trial court the opportunity to correct the error does not preserve that evidentiary error by raising it for the first time in a postjudgment motion for a new trial." *People*

*v Butsinas*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 364778); slip op at 10. Also, "challenged prosecutorial statements" have to be "preserved by contemporaneous objections and requests for curative instructions," so the failure to make a proper, timely objection in the trial court dictates that "appellate review is for outcome-determinative plain error." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). As a result, we must address defendant's claims of error by considering whether there was plain error that affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To avoid forfeiture of his claims under the plain error rule, defendant must establish (1) error (2) that "was plain, i.e., clear or obvious," and (3) that "the plain error affected substantial rights." *Id*. To satisfy the third requirement, defendant must show "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Applying these deferential standards, we find no basis for relief.

Defendant was charged with assaulting or resisting a police officer under MCL 750.81d(1). That requires proof "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). Additionally, "the prosecution must establish that the officers' actions were lawful as an element of resisting or obstructing a police officer under MCL 750.81d." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citation omitted). The term "obstruct" includes "a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

During the testimony of three law-enforcement officers, they referred to prior contact they had had with defendant. Deputy Troyer stated that he knew defendant through "contacts with the Sheriff's Office." Deputy LaCross testified that he was familiar with defendant due to "contacts through the last 30 years," and that he only had had contact with defendant when he was working. He also commented that, when the charged offense occurred, defendant was on tether, and Deputy LaCross was monitoring the tether and performing drug tests. He further explained that being "on tether" meant that defendant was released from jail on bond and wearing a GPS tether on his ankle. Finally, Undersheriff Postma testified that he knew defendant through "law enforcement contacts" and that he knew defendant was on tether.

Contrary to defendant's contention, we do not regard that testimony as improper other-acts or character evidence. The testimony revealed that defendant was on tether, and it explained why he was subject to drug testing. In order to establish the crime of assaulting or resisting an officer, the prosecutor must prove that the defendant knew the officer was performing official duties. MCL 750.81d(1). Evidence that defendant was on tether established why defendant was present at the tether office for a drug test, which in turn demonstrated that the officers had a legal basis to order defendant not to leave. We cannot even imagine how the prosecution could have established why defendant was at the tether office for a drug test without some evidence of defendant's history with law-enforcement officers. The evidence presented by the prosecution was not specific, and most of the evidence simply concerned defendant's contact with the police. It did not refer at any point to any prior criminal charge against defendant. Hence, the testimony was sanitized to ensure that the jury knew as little as possible about defendant's prior criminal involvement.

Deputy LaCross's comment that he knew defendant from contacts over the past 30 years was less directly related to the circumstances of the offense, so it carried a greater risk of prejudice.

But the prosecution did not ask Deputy LaCross for any details of the prior contacts. After Deputy LaCross made the statement, the prosecutor asked him if defendant knew that Deputy LaCross was a law-enforcement officer, which brought the direct examination back to the elements of the crime. Thus, Deputy LaCross's single statement about knowing defendant from contacts during a 30-year period does not warrant relief on appeal. The admission of that lone statement neither rose to the level of plain error nor affected defendant's substantial rights.

Turning to the prosecutor, defendant blames her for improperly cross-examining him about his experiences on tether and about cases unrelated to the instant case. But defendant volunteered testimony about having been off tether, and he claimed that the offense for which he was on trial was his newest case, so the prosecutor did not engage in misconduct by posing questions designed to counter those claims. A prosecutor may not inject "issues broader than the guilt or innocence of the accused under the controlling law." *People v Bahoda*, 448 Mich 261, 284; 531 NW2d 659 (1995). But "[p]rosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). If a "defendant has placed his character in issue, it is proper for the prosecution to introduce evidence that the defendant's character is not as impeccable as is claimed." *People v Leonard*, 224 Mich App 569, 594; 569 NW2d 663 (1997). The exchanges at issue are as follows:

*Q*. So, I guess, to be clear this is not your first time on tether?

*A*. No.

*Q*. You've been on and off of tether a few times; right?

*A*. I've been off tether one time.

*Q*. Okay. So in File—I guess would you agree with me—20-4063-FH you were on tether from February 3rd of 2020 through February 11th of 2021?

*A*. Correct.

*Q*. And then you went back on tether in File 22-65850-FY on—well I guess you were arraigned on March 29th of 2022 and you were placed out on tether again?

*A*. Yeah, I was tooken off tether for unauthorized visitors.

*Q*. Right.

*A*. Right.

*Q*. So you had some tether violations?

*A*. Uh—no drug—no drug failures; unauthorized visitors.

Later, the prosecution asked defendant if he would have stopped if he had heard commands from the deputies, and defendant responded that he would have done so, which resulted in the following exchange:

> *A.* Yeah, I paid $5,000.00 to bond out of jail four—four days prior so I definitely wouldn't have messed out—messed up bond. I—there was no reason for me to try to run. I paid bond and I was doing everything legal; so no.

> *Q.* I mean—but you already admitted at the last go around when you were on tether you had bond violations; right?

> *A.* I got out of jail though because you were—I've been waiting two and a half years for—for a trial that you refuse to run.

> *Q.* You've been waiting for quite a few trials?

> *A.* Three years. Yeah, this is—this is the newest one.

> *Q.* Oh, no.

> *A.* This is the newest one and I've got witnesses to it. Three years ago I allegedly stabbed somebody, but I'm still waiting for that trial because you guys are trying to frame me.

Defense counsel objected, and the court cautioned defendant not to say too much. The prosecution impeached defendant about the instant case being his most recent case, and then asked him about several different charges he faced, although the prosecution did not provide details other than that two of the cases involved "multiple felony charges."

The prosecutor's comments appear to be appropriate in the context of the trial. Defendant's theory of the case was that he had been on tether for more than 24 months and had been regularly tested for drugs during that period, that he believed that his test was clean, and that he thought that he was free to leave. When the prosecution asked defendant about his time on tether from 2020 to 2021 and about being placed back on tether in March 2022, it was in response to defendant's claim that he had been on tether for the past two years. Likewise, when defendant said that he would not have intentionally violated bond conditions because of the money he had paid to bond out of jail, it was appropriate for the prosecution to ask about the fact that he had just admitted to a previous bond violation. Finally, when defendant asserted that the instant case was his newest case, it was proper for the prosecution to question defendant about other cases that followed. Moreover, when instructing the jury, the trial court stated that the fact that defendant "commented on other alleged crimes are not evidence" and that the lawyers' statements and questions were not evidence. "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Accordingly, we find no error, much less plain error that affected defendant's substantial rights.

## B. JURY INSTRUCTIONS CONCERNING THE CHARGED OFFENSE

Defendant faults the trial court for inadequately and improperly instructing the jury on the charged crime of resisting or obstructing a police officer under MCL 750.81d(1). To preserve an instructional error for review on appeal, a defendant must object to the instruction before the jury deliberates. *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Defendant did not voice any objection, so the issue is not preserved, and our review is limited to a search for plain error that affected substantial rights. *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020). Jury instructions must include every element of the charged offense, and must not exclude material issues, defenses, or theories supported by the evidence. *Id*. at 653. It is a constitutional error for a jury instruction to omit an element of a crime. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

The offense of resisting or obstructing a police office under MCL 750.81d(1) requires the prosecution to prove (1) the defendant resisted or obstructed a police officer, and (2) the defendant knew or had reason to know that the person whom the defendant resisted or obstructed was a police officer performing official duties. *Corr*, 287 Mich App at 503. Additionally, the prosecution must prove that the actions of the officer were lawful. *Quinn*, 305 Mich App at 491-492. The trial court appropriately instructed the jury that the prosecution had to prove, beyond a reasonable doubt, that defendant resisted or obstructed Deputy LaCross, that defendant knew or had reason to know that Deputy LaCross was "performing his duties at the time," and that Deputy LaCross gave defendant "a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." Thus, the trial court instructed the jury on each element of the charged crime.

Defendant argues that the trial court erred by not reading M Crim JI 13.5(5), which states:

> The prosecutor must prove beyond a reasonable doubt that the [arrest was legal / the (officer / (state authorized person) was acting within (his / her) legal authority]. It is up to you to determine whether the [officer's / (state authorized person)'s] actions were legal according to the law as I have just described it to you.

The trial court's failure to read that instruction was not error at all, much less plain error affecting defendant's substantial rights. The trial court's instructions not only directed the jury to determine whether Deputy LaCross gave defendant "a lawful command, was making a lawful arrest, or was otherwise performing a lawful act[,]" but also explained that "[a]n arrest is legal if it is made due to a violation of a condition of release" on bond. The trial court further informed the jury that "[a] peace officer, without a warrant, may arrest and take into custody a Defendant" if "the peace officer . . . has or receives positive information that another peace officer has reasonable cause to believe . . . that he violated or has violated a condition of release as imposed by MCL 764.15e." Because the trial court accurately and completely defined the elements of the charged offense, defendant is not entitled to any relief for the trial court's failure to read M Crim JI 13.5(5) to the jury.

## C. PROSECUTORIAL MISCONDUCT

Defendant accuses the prosecutor of engaging in misconduct during her cross-examination of him and in her closing argument.[1]  But defendant did not object at any point to the questions or the arguments of the prosecutor, so our analysis is confined to a review for plain error that affected defendant's substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). A prosecutor may not inject "issues broader than the guilt or innocence of the accused under the controlling law," *Bahoda*, 448 Mich at 284 (quotation marks omitted), but prosecutorial remarks "must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial."  *Brown*, 279 Mich App at 135.  Generally, prosecutors should be given "great latitude regarding their arguments and conduct," and they "are free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *Bahoda*, 448 Mich at 282 (citations and quotation marks omitted, alteration in original). But prosecutors cannot "vouch for the credibility of a witness, nor suggest that the government has some special knowledge that the witness is testifying truthfully."  *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).  In contrast, prosecutors may "argue from the facts that a witness is credible" or that the defendant or another witness should not be believed. *Id*.

Here, the prosecutor suggested in her cross-examination of defendant, and then asserted in her closing argument, that defendant lied.  During closing argument, the prosecutor stated:

> And then on the other hand you have [defendant] who disagrees.  But you also watched him lie about this is—sounds like its one big conspiracy theory against [defendant] that this was the last case in time and we're just holding him on all these charges.

That statement was proper in the context of defendant's trial.  The prosecutor was allowed to argue from the facts that defendant, who testified in his own defense, was not credible. See *id*.  Defendant testified that the charge in the instant case was his newest case, but the prosecutor impeached him on that claim by questioning defendant about more recent cases against him.  Hence, it was proper for the prosecutor to refer to that exchange and use it to argue that defendant's testimony was not truthful.

The challenged portion of the prosecutor's cross-examination of defendant is as follows:

> *Q.* —so when Undersheriff Postma gets behind you and you stop and you walk towards him—
>
> *A.* Yep.

---

[1] This Court has recognized a distinction between claims of technical or inadvertent prosecutorial error and claims of prosecutorial misconduct, which would warrant professional discipline. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).  Here, defendant presents the issue as one of true prosecutorial misconduct, so we must analyze it as such.

*Q.* —you acquiesce to the arrest?

*A.* Put my hands up.

*Q.* Yep.

*A.* Yeah, I mean yeah, usually when a cop pulls down on you with their lights on, and they're like hey, come here, you stop. So if I was in the—already in the movement of running why—why would I have stopped and put my hands up?

*Q.* Well—I mean if you see cop cars coming from the—the south and then you see a cop car coming from the north; right?

*A.* Uh—I just told you I didn't see no other cop cars coming.

*Q.* Okay. Well I—

*A.* So—

*Q.* —also think that you've lied about a lot of stuff here today so.

*A.* That's your opinion.

*Q.* Okay. Fair enough.

The prosecutor's comment that she thought defendant "lied about a lot of stuff here today" was an improper statement, as opposed to a proper question. Indeed, the prosecution concedes on appeal that the comment was plainly inappropriate, but contends that that error did not affect defendant's substantial rights. We agree.

First, the prosecutor's statement during cross-examination of defendant, although plainly improper, did not imply that she had "special knowledge" about defendant's veracity. See *Bahoda*, 448 Mich at 276. Second, the comment was an isolated remark made during a combative exchange in the course of an otherwise-appropriate cross-examination. See *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). Third, the evidence against defendant was overwhelming on the charge of resisting or obstructing an officer. Three law-enforcement officers testified about how defendant flatly ignored shouted commands to stop as he fled from the building after learning that he was going to jail, and he had to be apprehended after he ran away as fast as he could from the officers. Fourth, the trial court instructed the jurors that "[t]he lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories." Additionally, the trial court told the jurors that "[t]he lawyers' questions to the witnesses . . . are also not evidence." Because "jurors are presumed to follow their instructions," *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008), the jurors presumably understood that the prosecutor's statement was not evidence, nor could they accept the statement as true. As a result, the plainly erroneous statement of the prosecutor did not affect defendant's substantial rights.

-8-

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues with respect to each claim of error that his trial attorney's failure to make an objection constituted ineffective assistance of counsel sufficient to justify a new trial. "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). Thus, we review the trial court's findings of fact for clear error, and we review the legal questions involved de novo. *Id*. Clear error exists when this Court is left with a definite and firm conviction that a mistake was made by the trial court. *Id*. Because defendant presented his claim of ineffective assistance of counsel in a posttrial motion, that claim is preserved for review. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (explaining that "a defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective").

The United States Constitution and Michigan's 1963 Constitution both guarantee criminal defendants the effective assistance of counsel. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). To obtain a new trial based on ineffective assistance of counsel, defendant must show that his attorney's performance "fell below an objective standard of reasonableness . . . ." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Also, defendant must demonstrate that, "but for counsel's deficient performance, there is a reasonable probability that the outcome [of the trial] would have been different." *Id*. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Yeager*, 511 Mich at 488 (quotation marks and citations omitted). As a general rule, "attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy." *Id*. Also, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). With these standards in mind, we must consider each of the two requirements for ineffective assistance of counsel, i.e., deficient performance and prejudice.

## 1. DEFICIENT PERFORMANCE

Defendant broadly faults his trial attorney for failing to object to the prosecutor's conduct at several stages of the trial. First, defendant asserts that his attorney should have objected to the presentation of evidence that he had been on tether before and that all the law-enforcement officers who testified had had contact with him for years in the course of their duties. Based on our ruling that no error occurred in the admission of that evidence, we conclude that defendant's attorney had neither a reason nor a responsibility to object to that evidence because any objection would have been futile. See *id*. Second, defendant blames his attorney for failing to ask the trial court to give the jury instruction set forth in M Crim JI 13.5(5). But as we have explained above, the trial court did not need to give that instruction because its instructions fully and fairly described the elements of the charge against defendant. Therefore, defense counsel's failure to request M Crim JI 13.5(5) cannot be characterized as deficient representation because such a request would have been futile. See *id*. Similarly, although defendant criticizes his attorney for failing to object to the prosecutor's closing argument, the prosecutor said nothing objectionable in her closing argument or her rebuttal, so any objection would have been futile. See *id*.

Defendant has a point, however, in claiming deficient performance based on his attorney's silence following the prosecutor's statement during cross-examination of defendant that "I . . . also think that you've lied about a lot of stuff here today so." Perhaps counsel's failure to object could be characterized as a strategic decision not to engage in an argument about defendant's credibility in front of the jury, but that characterization seems too charitable to counsel. Instead, we conclude that defense counsel should have objected to that plainly improper statement, so defendant has met his obligation to show deficient performance in that one respect.

## 2. PREJUDICE

Although defendant has demonstrated deficient performance by his counsel in one respect, defendant is not entitled to a new trial unless he can establish that the deficient performance caused him prejudice. In other words, defendant must show that, "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Yeager*, 511 Mich at 488 (quotation marks and citation omitted). Defendant has made no such showing in this case.

As we have explained, the prosecutor's comment was a single, isolated remark made during a combative exchange in the course of an otherwise-appropriate cross-examination. Beyond that, the evidence was overwhelming on the charge of resisting or obstructing an officer. Specifically, three law-enforcement officers testified about how defendant blatantly ignored shouted commands to stop as he fled the building after being told that he was going to jail, and then defendant had to be apprehended after he ran away as fast as he could from the officers. Under the circumstances, we find no reasonable probability that the jury would have acquitted defendant if his trial attorney had objected to the prosecutor's comment during her cross-examination that "I . . . also think that you've lied about a lot of stuff here today so." Accordingly, defendant is not entitled to a new trial based on ineffective assistance of counsel.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher P. Yates
/s/ Kathleen A. Feeney

-10-